[No. 30490. *En Banc.* July 1, 1948.]

THE STATE OF WASHINGTON, *Respondent*, v. EDNA BASDEN, *Appellant*.[1]

[1]Reported in 196 P. (2d) 308.

*Tonkoff & Holst*, for appellant.

*Owen Clarke* and *Ronald R. Hull*, for respondent.

BEALS, J.—The defendant, Edna Basden, alias Jean Basden, by information filed by the prosecuting attorney for Yakima county, was charged as follows: by count I with the crime of "placing a female in house of prostitution"; by count II with the crime of accepting the earnings of a common prostitute.

The defendant appeared by way of a demurrer to the information and a motion against the same; and thereafter an amended and somewhat amplified information was filed, also containing two counts charging the defendant with the commission of the same crimes.

On the trial, evidence was introduced by the prosecution, and, when the state rested its case, the defendant moved the court to direct a verdict of not guilty to each count of the information. The trial court denied the motion as to count I, but granted the motion as to count II.

The defendant then rested her case without offering any evidence, standing upon her motion to dismiss count I.

The court instructed the jury, and, in due time, a verdict was returned finding the defendant guilty as charged under count I of the information, and, pursuant to the court's directions, finding the defendant not guilty as charged by count II.

From a judgment of guilty and sentence, pursuant to the verdict of the jury, the defendant has appealed.

Appellant assigns error upon the refusal of the trial court to grant her motion for a directed verdict at the conclusion

of the state's case; upon the denial by the trial court of appellant's motion for arrest of judgment, and judgment in her favor notwithstanding the verdict, and upon the denial of appellant's motion for a new trial.

By count I of the amended information, upon which count appellant was found guilty, the appellant was accused

". . . of the crime of PLACING A FEMALE IN HOUSE OF PROSTITUTION committed as follows:

"SHE, the said EDNA BASDEN, alias JEAN BASDEN, in the County of Yakima, State of Washington, on or about between September 1, 1946, and May 15, 1947, wilfully, unlawfully and feloniously did place a female person commonly known as SHIRLEY LANE, whose true name is unknown to the Prosecuting Attorney, in a house of prostitution with intent that the said SHIRLEY LANE, whose true name is unknown to the Prosecuting Attorney, should live a life of prostitution. . . ."

Laws of 1927, chapter 186, § 1, p. 232 (Rem. Rev. Stat., § 2440 [P.P.C. § 118-191]), reads as follows:

"AN ACT relating to placing females in houses of prostitution and providing penalties therefor, and amending Section 2440 of Chapter VI of Remington's Compiled Statutes of Washington.

"*Be It Enacted by the Legislature of the State of Washington:*

"SECTION 1. That section 2440 of Remington's Compiled Statutes be amended to read as follows:

"Section 2440:

"Every person who—

"(1) Shall place a female in the charge or custody of another person for immoral purposes, or in a house of prostitution, with intent that she shall live a life of prostitution, or who shall compel any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution, or shall compel any such female to reside in a house of prostitution or to live a life of prostitution; or

"(2) Shall ask or receive any compensation, gratuity or reward, or promise thereof, for or on account of placing in a house of prostitution or elsewhere any female for the purpose of causing her to cohabit with any male person or persons not her husband; or

"(3) Shall give, offer, or promise any compensation, gratuity or reward, to procure any female for the purpose

of placing her for immoral purposes in any house of prostitution, or elsewhere; or

"(4) Being the husband of any woman, or the parent, guardian or other person having legal charge of the person of a female shall connive at, consent to, or permit her being or remaining in any house of prostitution or leading a life of prostitution; or

"(5) Shall live with or accept any earnings of a common prostitute, or entice or solicit any person to go to a house of prostitution for any immoral purpose;

"Shall be punished by imprisonment in the state penitentiary for not less than one year nor more than five years."

Subdivisions 1 and 2, above quoted, are identical with subdivisions 1 and 2, Laws of 1909, chapter 249, § 188, p. 944, known as the "criminal code." Subdivisions 3, 4, and 5 of the later act differ in some particulars (here irrelevant) from the corresponding subdivisions of the act of 1909.

The evidence introduced by the state, which was the only evidence before the jury, discloses that appellant resided in Toppenish, Yakima county, Washington, and was the proprietor of a suite of rooms, having an entrance by way of a stairway from the street, on the second floor of a building located on south Division street, which suite was known as the "Tourist Rooms," and in which place was conducted a house of prostitution.

The premises were raided by deputy sheriffs at midnight, May 16, 1947, and three women, known, respectively, as Dolly Johnson, Donna Reed, and Shirley Lane, were arrested. The three women were called as witnesses by the state, each testifying concerning her name, age, place of residence, and her acquaintance with appellant and the other two women. Each witness refused to answer other questions propounded by the state, upon the ground that answers to such questions would tend to incriminate the witness.

The evidence amply supports a finding by the jury that the "Tourist Rooms" were operated by appellant as a house of prostitution; that Shirley Lane was, and for some time had been, an occupant of the premises as a common prosti-

tute, availing herself of the opportunity thereby afforded her to ply her trade.

The statement of facts discloses nothing concerning the circumstances surrounding Shirley Lane's becoming an inmate of the "Tourist Rooms," or how long she had resided there.

The question to be here determined is whether the jury's verdict of guilty as charged is supported by the evidence.

■ In construing a penal statute for the purpose of determining whether or not a certain state of facts falls within the terms thereof defining a crime, the law is to be strictly construed.

In the case of *State v. Hoffman*, 110 Wash. 82, 188 Pac. 25, this rule was followed. We quote from the opinion:

"Unless the language of the statute makes the conduct of the appellant criminal, there can be no recourse to the intention of the act to establish its interpretation. Though conduct may be within the reason of an act and the mischief to be remedied thereby, yet it cannot be punished as a crime if not so denominated by the statute. Lewis, Sutherland's Statutory Construction (2d ed.), § 520."

In the recent case of *State v. Hoffman*, 30 Wn. (2d) 475, 191 P. (2d) 865, we again applied the rule that a statute declaring a certain act to be a crime must be construed strictly.

In the case at bar, the trial court followed the argument advanced by respondent, and by respondent maintained here, that, because uncontradicted evidence disclosed that appellant was the proprietor of the "Tourist Rooms," a house of prostitution, and allowed Shirley Lane, a common prostitute, to remain therein and for pay indulge in indiscriminate sexual intercourse with men, appellant could be found guilty, as charged in the information, of having placed Shirley Lane in the "Tourist Rooms," with the intent that she should practice prostitution therein.

In the case of *State v. Stone*, 66 Wash. 625, 120 Pac. 76, it appeared that the defendant had been convicted of the crime of placing a female in the charge of another person for immoral purposes, namely, for the purposes of prostitu-

tion, with intent that the female named should live a life of prostitution, the charge having been drawn pursuant to Laws of 1909, chapter 249, § 188, subd. 1, p. 944. The defendant appealed, and, in an opinion by Ellis, J., this court said that:

"Actual physical restraint is not essential to the crime. Proof of moral restraint or persuasion is all that can be reasonably required."

It was held that the evidence supported the jury's verdict of guilty, there being testimony to the effect that the appellant had taken the female in question to a house of prostitution conducted by the appellant and his wife, turned her over to his wife, and that, as the result of persuasion on the part of appellant's wife, the woman remained there as a prostitute.

The judgment appealed from was reversed upon a ground which has no bearing upon the question with which we are here concerned. The opinion was signed by all members of the Department of this court to which the appeal was submitted.

In the case of *State v. Hanes*, 84 Wash. 601, 147 Pac. 193, this court, upon an appeal by one convicted of "the crime of placing a female in a house of prostitution, with intent that such female should live a life of prostitution," used the following language:

"Appellant contends that the word 'place' has a meaning more extended than a mere invitation to remain at a place; that it implies a restraint, either physical or moral. The law has no such restricted meaning. The object of the statute is to suppress the practice of prostitution, and to place a female in a house of prostitution means the furnishing of a place and opportunity. The subdivision of the statute under which appellant is charged does not imply the element of force, either physical or moral.

"It will be noticed that the statute, after defining the crime of which appellant is charged, continues: 'or who shall compel any female to reside with him or with any other person for immoral purposes, or for the purposes of prostitution, or shall compel any such female to reside in a house of prostitution or to live a life of prostitution;' sub-

division 1, Rem. & Bal. Code, § 2440. The statute is in the disjunctive. A person may be guilty of a crime if committed in any of the ways covered by the statute."

The case last cited was argued to a Department of this court other than the department which decided the case of *State v. Stone, supra,* and the opinion was signed by all the judges thereof, including Chadwick, J., who wrote the opinion and who had signed the opinion in the *Stone* case.

In the case of *State v. Stone, supra,* this court held that the evidence was sufficient to justify a finding by the jury that the appellant had placed the woman named in the information in charge of another (the wife of appellant) for immoral purposes, namely, for the purpose of prostitution, with intent that the woman should live a life of prostitution, the evidence, which the jury had apparently believed, being sufficient to bring the case within the terms of the statute.

In the later case of *State v. Hanes, supra,* this court stated that the object of the statute was to suppress the practice of prostitution, and that to place a female in a house of prostitution meant the furnishing of a place and opportunity, the statute not implying the element of force, either physical or moral. The opinion states that the appellant was charged with the crime of placing a female in a house of prostitution, with intent that such female should live a life of prostitution. From the opinion, it appears that the evidence introduced by the prosecution tended to prove that the appellant was the keeper of a livery stable, where he had a room or rooms; that the woman in question consorted with the appellant "and was at least a loiterer about his place," and that competent evidence was introduced to the effect that the woman had "plied her trade at will." The opinion further states that there was

". . . testimony sufficient to sustain the findings of the jury that appellant did in fact know that the woman was practicing prostitution for money and that she gave appellant a part of her earnings."

Evidently, the appellant did not take the witness stand, and the judgment appealed from was reversed, and the

cause remanded for a new trial, because the trial court failed to instruct the jury that no inference of guilt should arise against the accused if he failed or refused to testify as a witness on his own behalf. Apparently, the court was of the opinion that the evidence was sufficient to support a finding that the appellant had placed a woman in a situation to live a life of prostitution; that she had there lived as a prostitute, and that she gave the appellant a portion of her earnings.

The opinions in the *Stone* and *Hanes* cases are inconsistent in important particulars.

■ We are not in accord with the statement in the opinion in the *Hanes* case to the effect that the statute there in question, and also in the case at bar, was enacted primarily for the purpose of suppressing the practice of prostitution. The statute is directed against procurers and panders, and those who profit from the prostitution of women. The effect of the statute is, of course, to limit the practice of prostitution, but it nowhere makes the act or practice of prostitution a crime, save when committed in connection with other acts denounced by the statute and which are thereby made criminal. The statute is not directed against prostitutes.

The verb "place," as used in subd. 1 of the statute, means more than the furnishing of a place (noun) and opportunity to practice prostitution. Whether or not force, physical or moral, is a necessary incident to the commission of the crime described in the first definition contained in subd. 1 of the statute, *supra*, need not be here considered. The use of the word "compel," in the remaining portions of the subdivision, of course, implies the use of force of some nature. In the case at bar, appellant was charged under the first portion of the subdivision. There are other statutes of this state directly operating against houses of prostitution and prostitutes (Rem. Rev. Stat., § 2688 [P.P.C. § 118-269], subd. 3; Rem. Rev. Stat., §§ 9924, 9925 [P.P.C. §§ 81-47, -49]).

It nowhere appears from the evidence that Shirley Lane was ever employed by appellant, and no evidence was in-

troduced as to the length of time Shirley Lane had been an inmate of the "Tourist Rooms" and practicing prostitution therein (save that it appears that she had been there for a few weeks prior to the raid), nor does the statement of facts disclose anything concerning the circumstances surrounding her taking up her residence therein, or at whose request or suggestion she did so. While she probably moved in with appellant's consent, it cannot be presumed that appellant invited her to become an inmate of the establishment, as she might have herself requested that she be admitted, or the invitation might have been extended by one of the other prostitutes.

Rem. Rev. Stat., § 2440, *supra*, is basically directed against procurers, panders, and similar criminals. Such statutes have been enacted by many states and by the Federal government.

In 2 Brill Cyclopedia Criminal Law 1661, § 1069, appears the following text:

"In many of the states there are statutes specifically punishing pandering. A pander is one who caters for the lusts of others, a male bawd, a pimp or procurer, and pandering is catering for the gratification or lust of another. . . .

"Many of the statutes in terms provide what acts shall constitute pandering. Those most commonly included are procuring or attempting to procure an inmate for a house of prostitution, procuring for a female a place as an inmate of such a house, inducing, persuading, etc., a female to become an inmate of such a house, or to enter any place in which prostitution is practiced, encouraged, or allowed, or to enter such a place for the purpose of prostitution, causing, coercing, or persuading an inmate of a house of prostitution to remain therein as an inmate, inducing or procuring a woman to come into or to go out of the state for the purpose of sexual intercourse or prostitution, . . .

"There are also statutes in some of the states providing for the punishment of any person who places a female in a house of prostitution, with intent that she shall live the life of a prostitute, or who induces, entices or procures a woman to enter such a house for the purposes of prostitution, sexual intercourse, or other immoral purposes, or who knowingly receives any money or other valuable thing for, or on account of procuring and placing in the custody of

another person for immoral purposes, any woman with or without her consent."

■ The statute of this state clearly falls within the above classification. ·For convenient reference, we again quote Rem. Rev. Stat., § 2440, subd. 1:

"Every person who—

"(1) Shall place a female in the charge or custody of another person for immoral purposes, or in a house of prostitution, with intent that she shall live a life of prostitution, or who shall compel any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution, or shall compel any such female to reside in a house of prostitution or to live a life of prostitution; . . ."

The first clause of subd. 1, *supra*, declares it to be a crime to "place a female in the charge or custody of another person for immoral purposes." As used in that clause of the subdivision, the verb "place" clearly imports an affirmative act on the part of the person accomplishing the placing; some previous project, plan, or arrangement with a third party. The existence of the one who places, the one who is placed, and a person or persons with whom the one placed is located, is necessary to the completion of the offense.

The subdivision also declares it to be a crime to "place a female . . . in a house of prostitution, with intent that she shall live a life of prostitution." The word "place" appears only once in connection with the definitions of the two offenses, and must be construed as having the same meaning in each instance. The word cannot be given one meaning when considered as part of the first crime defined, and another meaning when considered in connection with the second act declared to be a crime.

If the person conducting a house of prostitution simply admits a female to the establishment on her own request, to become an inmate thereof and to practice prostitution therein, it does not amount, on the part of the person in charge, to the "placing" of a female in a house of prostitution, within the intent of the act.

Webster's New International Dictionary (2d ed.) defines the verb "place" as follows:

"To put or set in a particular rank, office, position, or condition of life; to secure a position, office, or the like, for; as, in whatever sphere one is *placed*."

The Oxford Dictionary contains several definitions of the verb "place." Under 2b is found the following:

"To find a place or situation for; to arrange for the employment, living, or marriage of; to settle."

Used in connection with a human being, these definitions are clearly comprehensive and adequate.

Subdivision 2 of the act declares it to be a crime to ask or receive any compensation, gratuity, or reward, or promise thereof, on account of placing in a house of prostitution or elsewhere any female for the purpose of causing her to cohabit with "any male person or persons not her husband."

Subdivision 3 declares it to be a crime to offer or promise compensation or reward "to procure any female for the purpose of placing her for immoral purposes in any house of prostitution, or elsewhere."

Subdivisions 2 and 3 are directed against procurers who ask or receive compensation, and so forth, and those who promise to reward a procurer. They are not limited to the procuring of inmates for houses of prostitution, but include the procuring of females for other immoral purposes.

Subdivisions 4 and 5 are also directed against procurers, or persons living off the earnings of prostitutes.

The statute, pursuant to which appellant was charged, is clearly directed against procurers and panders.

The word "procurer" is defined in Webster's New International Dictionary (2d ed.) as follows:

"One who procures; as: . . . One whose business it is to supply women to seducers or houses of ill fame; a pander; a pimp."

The same dictionary defines "pander" as follows:

"A go-between in love intrigues; a male, rarely a female, bawd; a pimp; procurer or procuress. A minister to the evil designs and passions of others."

In the case of *Boykin v. United States*, 130 F. (2d) 416, the United States court of appeals for the District of Columbia considered the appeal of one who had been convicted of pandering, committed by the placing by the defendant of his daughter in a hotel for the purpose of causing her " 'illegally to cohabit with divers male persons.' " The evidence showed that the defendant and his daughter had moved from a nearby room to the hotel where the offense was committed. The defendant was charged pursuant to a section of the code of the District of Columbia, cited in the opinion, the statute defining the offense as follows:

" 'Any person who shall receive any money or other valuable thing for or on account of procuring for or placing in a house of prostitution or elsewhere any female for the purpose of causing her illegally to cohabit with any male person or persons shall be guilty of a felony, and upon conviction thereof shall be imprisoned for not less than one nor more than five years.' "

This statute refers to "procuring for or placing in a house of prostitution or elsewhere any female . . ." The court analyzed the statute, holding that the "act of procuring a woman for or placing her" in a house of prostitution, and so forth, was a necessary element of the charge. It was assumed that there must be an act of placing, and the court held that the evidence showed a placing, within the intent of the statute. In the opinion, the phrases "procuring for" and "placing in" are used interchangeably. In the course of the opinion, appears the following:

"We think therefore the gravamen of the offense is the act of procuring or placing, not that of receiving money. Taking payment is of course a necessary element. But it is not the gist of the crime. Since appellant was convicted under separate counts, which in the light of the evidence presented to sustain them differed only in charging separate acts of receiving money for a single placing, and was sentenced under each conviction, the sentence was invalid. It was in fact a sentence for two crimes when, as we now hold, only one had been charged under the statute for the acts relied upon."

In the case of *People v. Odierno*, 166 Misc. 108, 2 N. Y. S. (2d) 99, the county court of Queens county, New York,

dismissed an indictment returned by the grand jury, charging the defendant with a violation of subd. 2 of § 2460 of the penal law. The facts charged consisted of living with a woman not his wife. The New York statute, above referred to, contains sections corresponding, to some extent, with sections of the statute of this state above quoted, subd. 2 thereof containing language almost identical with that in subd. 1 of the statute of this state here in question. The court held that the allegations of the indictment did not constitute a crime, within the statute, stating that the law was

" . . . directed against influential offenders whose *business* was gain through prostitution; its purpose was to reach the systemization of prostitution on a commercial basis."

In the case of *People v. Draper*, 169 App. Div. 479, 154 N. Y. Supp. 1034, the New York supreme court considered § 2460 of the penal law, and held that evidence introduced on the trial of the defendant, pursuant to an indictment charging that the defendant had induced and procured a named female for the purpose of prostitution, and advised her to have unlawful sexual intercourse for money with men, and did induce and procure her to have such unlawful intercourse, was insufficient to support a verdict of guilty. The court held that the scope of the act

" . . . should not be enlarged by construction or implication, and the courts should not impose the penalty except in cases where the plain language of the section requires it."

The judgment appealed from was reversed, and the discharge of the defendant directed.

In the case of *People v. Duncan*, 22 Cal. App. 430, 134 Pac. 797, the district court of appeals of California affirmed a judgment of guilty in the case of a man tried for " 'the crime of permitting his wife to remain in a house of prostitution.' " The appellant contended that, before he could be found guilty of the crime charged, some affirmative act, such as placing, keeping, or committing his wife to a house of prostitution, must be shown. The court noted that the

appellant had not been charged "with having placed" his wife in a house of prostitution, but that he "knowingly allowed and permitted her to remain." The court stated that:

"The placing of the wife in such house is a crime distinct from that of allowing or permitting her to remain therein."

The judgment was affirmed, but the court definitely distinguished the offense which would have been committed by "placing" and that committed by "permitting."

In the extensive notes to the case of *People v. Hassil* (341 Ill. 286, 173 N. E. 355), 74 A. L. R. 307, 311, many cases which consider "procuring acts" and "pandering statutes" are cited and discussed.

It does not appear that this court has been called upon to consider the question here presented since the rendition of the opinion in the case of *State v. Hanes, supra.* While we are reluctant to modify a statutory construction which was pronounced by this court many years ago, we are convinced that the statement, in the case above referred to, that "to place a female in a house of prostitution means the furnishing of a place and opportunity" is incorrect as making an act a crime which is not so defined by the statute.

As above stated, for the purpose of determining whether or not a certain state of facts comes within the terms of a statute defining a crime, the law should be strictly construed. This rule was not followed in the *Hanes* case in the particular last above referred to. It may well be that the provision of the statute with which we are now concerned may be violated even though the element of force, either physical or moral, be lacking, but no such question is now before us and we express no opinion on that point. It may also be true that the evidence in the *Hanes* case may have supported the verdict of guilty and the judgment entered pursuant thereto. Our criticism of the opinion merely applies to the pronouncement by the court last above quoted.

In the case at bar, the evidence discloses nothing concerning the entry of Shirley Lane, as a prostitute, into the

"Tourist Rooms." From the evidence, no more appears than that the appellant was in charge of that house of prostitution, and that Shirley Lane was an inmate therein and had been such an inmate for at least several weeks.

The first two crimes defined in Laws of 1927, chapter 186, § 1, subd. 1, p. 232 (Rem. Rev. Stat., § 2440), are directed against procurers, and, to support a finding of guilty, pursuant to a charge based upon that portion of the subdivision, the evidence must show more than that the person charged merely furnished a place and opportunity to a female to practice prostitution in a house of ill fame. Our statute, as stated by the court in the case of *Boykin v. United States, supra,* in construing the statute before that court for consideration, "does not penalize brothel keepers as such." The authorities above cited clearly support this construction of the statute.

The evidence does not support the verdict returned by the jury, finding appellant guilty of the crime charged by the information.

The judgment appealed from is reversed, with instructions to the trial court to discharge the appellant.

MALLERY, C. J., MILLARD, SIMPSON, JEFFERS, and HILL, JJ., concur.

SCHWELLENBACH, J. (dissenting)—The testimony showed that the Tourist Rooms in Toppenish, Washington, were operated as a house of prostitution; that appellant was the proprietor; and that for some time Shirley Lane had practiced prostitution therein with the knowledge and consent, and in the employ, of appellant.

Rem. Rev. Stat., § 2440 [P.P.C. § 118-191], says:

"Every person who—
"(1) Shall place a female . . . in a house of prostitution . . .
"Shall be punished . . ."

That statute is not limited to procurers. It refers to any person who does any of the acts prohibited. It includes any person who, in operating a house of prostitution, employs or maintains girls therein. When the appellant, as pro-

prietor, made available the Tourist Rooms for Shirley Lane and allowed her to ply her trade as a prostitute, she placed her there. Is the statute restricted to third persons? I think not. I agree with the majority that the word "place," as used here, is a verb. However, cannot one place a person in one's own employment? Surely, one who operates a store can place a clerk in his store with intent that the clerk should help him conduct the business in which he is engaged. Nor is it necessary that an invitation be extended to the clerk. The clerk's offer to work would be sufficient. A showing that the clerk has been working there with the knowledge and acquiescence of the owner is sufficient for one to find that he was "placed" there by the owner, either directly or indirectly.

The record shows that Shirley Lane had been working at the Tourist Rooms as a prostitute. Clearly, this was with the knowledge and acquiescence of appellant. She was "placed" there by appellant.

The majority states that there are other statutes of this state directly operating against houses of prostitution, citing Rem. Rev. Stat., §§ 2688, 9924, and 9925 [P.P.C. §§ 118-269, 81-47, -49]. Sections 9924 and 9925 are not a part of the criminal code, but provide for the abatement of such houses as nuisances, and further provide for a fine which may be levied upon anyone convicted of erecting, causing, or contriving a nuisance. Section 2688 is the vagrancy statute, which includes in its many subdivisions, prostitution, but § 2440 is the only criminal statute which directly operates against and adequately covers this subject. It is the only statute which provides sufficient punishment to be a deterrent against commission of the crimes. A reading of the five sections of the statute shows that it is all-inclusive and clearly demonstrates that its purpose was to suppress the practice of prostitution.

In 1915, this court, in *State v. Hanes*, 84 Wash. 601, 147 Pac. 193, interpreted the statute to mean, "To place a female in a house of prostitution means the furnishing of a place and opportunity." The legislature has met every two years since we made that interpretation of the statute and

has not seen fit to change the law. Its long acquiescence has confirmed our interpretation. For thirty-three years the prosecutors and trial judges have accepted and acted on our interpretation of the act. If we, now, after all of this time, change the criminal law of this state, prosecutors will hesitate to file charges and put the taxpayers to the expense of a trial, and trial judges will hesitate to instruct juries, for fear we may change the law by overruling some other old case.

The *Hanes* case was a practical interpretation of the crime of placing a female in a house of prostitution and should not be overruled.

The judgment of conviction should be affirmed.

ROBINSON, J., concurs with SCHWELLENBACH, J.

STEINERT, J., did not participate.

E. W. *Klein,* for respondent.

[1]Reported in 195 P. (2d) 642.