[No. 31402. Department Two. October 26, 1950.]

THE STATE OF WASHINGTON, *Respondent*, v. NORMAN WOODRING, *Appellant*.[1]

[1]Reported in 223 P. (2d) 459.

*Bertil E. Johnson* and *H. Frank Stubbs*, for appellant.

*Patrick M. Steele, Charles W. Billinghurst,* and *Jennings P. Felix,* for respondent.

MALLERY, J.—In count II, the defendant was charged, in the language of Rem. Rev. Stat., § 2440, subd. 1 [P.P.C. § 118-191], with placing Cleo Christensen in a house of prostitution.

In counts III and IV, he was charged, in the language of Rem. Rev. Stat., § 2440, subd. 5, with accepting the earnings of common prostitutes, Cleo Christensen and Alvina Newman.

The defendant was convicted on these three counts and the other counts in the information were dismissed. The defendant appeals.

A customer of the house of prostitution testified for the state. It is not contended, nor could it be, that Cleo Christensen and Alvina Newman were not prostitutes and did not practice prostitution in the premises owned by the appellant, in which he lived, and for the management of which he had retained the services of one Mrs. Wells, who was a state's witness.

The appellant contends that the evidence was insufficient to take count II to the jury. He invokes the rule of *State v. Basden,* 31 Wn. (2d) 63, 196 P. (2d) 308, which is to the effect that, to satisfy the requirements of the statute, it is

necessary to show that the defendant did some affirmative act to constitute a placing of a female in a house of prostitution, with intent that she lead a life of prostitution therein. The *Basden* case, *supra,* overruled the earlier case of *State v. Hanes,* 84 Wash. 601, 147 Pac. 193, which had held that "to place a female in a house of prostitution means the furnishing of a place and opportunity."

In the *Basden* case, *supra,* it was conceded by the appellant that prostitution was practiced in the hotel in question, but the record was wholly silent as to how the prostitutes came to be there, so it was held that there was a failure of proof as to the act of "placing" them there as charged in the information. That situation is not present in the instant case.

We quote from the testimony given by Mrs. Wells, who managed the place owned by the appellant under a profit-sharing arrangement with him. The testimony relates to the occasion when Cleo Christensen first came to appellant's place, and is as follows:

"A. Well, a cab driver brought her to the house and said that she just got in town and she needed a place to stay, and I didn't know her and no one else knew her and the cab driver said he had just met her, so I told her she could. I talked to Mr. Woodring. If he said I could let her have a room, I could let her have a room. I asked him and he said, 'What kind of girl is she?' And I said, I don't know. He said, 'Well, I will talk to her,' and so he talked to her and he said I could let her have a room and to charge her seven dollars a week. She said she would pay me when she make some money, which she was very sick when she came there."

Of course, it is from other testimony in the case that we learn what the arrangement between the appellant and his manager was and how the prostitutes in the house dropped their earnings on the stairs, which were collected by the manager and divided with appellant, but from the quoted testimony we find such an affirmative act as is contemplated by the statute. Appellant's manager did not take the responsibility of placing the female in the house. She referred the decision, as to that matter, to the appellant.

The appellant talked with the female and directed his manager to take her into the house. The giving of this direction, as an exercise of his own discretion, was an affirmative act. We hold that it satisfied the requirements of the statute. Her practice of prostitution and the division of her earnings, by arrangement with his manager, is sufficient to establish what his intent was in "placing" her there.

Counts III and IV, charging appellant with accepting the earnings of the prostitutes in question, are amply supported by the evidence, which showed, with some particularity, what appellant's arrangement with his manager was and how the earnings of the prostitutes were divided.

The appellant contends counts III and IV of the information were fatally defective in failing to allege that appellant accepted earnings of a prostitute *without giving legal consideration therefor*. Of course, the earnings of prostitutes may be lawfully accepted in return for furnishing goods and services in the legal channels of trade, and it was necessary that the proof of the instant charges show that the earnings were received as such and without legal consideration. That is not to say, however, that it was necessary for the *information* to negative the legality of the consideration given a prostitute in return for accepting her earnings. In the instant case, the jury was properly instructed upon this requirement of the law as to the proof of the charges. The record shows the acceptance of their earnings as those of prostitutes in return for supplying them a place and opportunity for the practice of prostitution. See *State v. Columbus*, 74 Wash. 290, 133 Pac. 455. That an information couched in the language of the statute is sufficient, is now too well settled in this state to require citations of authority. The instant information followed the language of the statute. The assignment of error is without merit.

Appellant contends that a photostatic copy of a postal money-order receipt was improperly admitted in evidence. The circumstances surrounding this exhibit are that a customer had presented a money order for one hundred dollars

to Cleo Christensen for her services for the night. She took the money order downstairs and brought him back fifty dollars in change. The photostatic copy bore the appellant's signature and showed that he had received the money from the post office. In laying the foundation for the admission of this secondary evidence, the state had called the superintendent of the money-order department of the post office at Tacoma, who testified that the original was unobtainable by reason of a Federal post-office regulation. Thereafter, the photostatic copy was admitted as secondary evidence.

The appellant contends that due diligence in obtaining the best evidence was not shown and, hence, the secondary evidence was not admissible. With this we do not agree. In the light of the Federal regulation a foredoomed effort to obtain the original would have been futile. It is unnecessary to make idle gestures in order to lay a foundation for the introduction of secondary evidence.

Appellant's fifth assignment of error is as follows:

"5. That the Court erred in allowing the Prosecuting Attorney over objection to show the arrest of Appellant by the police when the Appellant had not taken the stand as a witness."

He cites authorities on the point that the state cannot introduce evidence attacking the character of the accused prior to his putting his character and reputation in issue.

It is appellant's theory that evidence of his arrest on the instant charge does this. We hold otherwise. Evidence touching arrest of a defendant on the instant charge neither puts his reputation in issue nor shows the commission of crimes *other than the one charged*. Such evidence connected with the arrest as has probative value concerning the crime charged, is admissible.

Moreover, the testimony touching the arrest was brought out in the cross-examination of police officer Welton by the appellant. The circumstances surrounding the arrest were further inquired into by the state on redirect examination, without objection by the appellant. It was not until the direct examination of officer Willey, along the

same line, that appellant objected to the testimony on the ground that it was immaterial. Appellant had opened the inquiry, and cannot later complain that the state developed it further. See *State v. Regan*, 8 Wash. 506, 36 Pac. 472; *State v. Edelstein*, 146 Wash. 221, 262 Pac. 622.

The appellant contends that the court erred in permitting the prosecutor to ask leading questions of his own witness, Mrs. Wells. We quote the rule in this state upon the question of *leading questions*:

"In addition, the rule has been announced many times by this court that the trial court has a wide discretion in determining what is a proper form of question and as to permitting the asking of a question that is leading." *State v. Scott*, 20 Wn. (2d) 696, 149 P. (2d) 152.

We think the court's discretion was not abused by the leading questions permitted in this case.

The judgment is affirmed.

ROBINSON, DONWORTH, GRADY, and HAMLEY, JJ., concur.

[1]Reported in 223 P. (2d) 448.