[No. 44737.   En Banc.   November 3, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. LEONARD
LEE CARTER, *Appellant.*

*John G. Ziegler,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney, Ronald H. Clark, Senior Deputy,* and *Elsa R. Durham, Deputy,* for respondent.

*Richard Hansen* on behalf of Seattle–King County Public Defender, *Richard Emery* on behalf of Institutional Legal Services, *Robert E. Schillberg, Prosecuting Attorney for Snohomish County,* and *David G. Metcalf, Deputy,* amici curiae.

HAMILTON, J.—Appellant, Leonard Carter, was convicted by a jury of the crime of pimping under former RCW 9.79.060(3).[1] His main contention on appeal concerns the constitutionality and interpretation of RCW 9.79.060(3).

[1]RCW 9.79.060 provided in pertinent part:

"Every person who—

". . .

"(3) Shall give, offer, or promise any compensation, gratuity or reward, to procure any person for the purpose of placing such person for immoral purposes in any house of prostitution, or elsewhere; . . .

". . .

"Shall be punished by imprisonment in the state penitentiary for not less than

Appellant also asserts the trial court erred in ruling that under RCW 10.52.030,[2] the court lacked discretion to prohibit the prosecutor from introducing evidence of appellant's prior conviction for "soliciting a minor for immoral purposes" for impeachment purposes. We affirm the judgment and sentence.

The main witness for the prosecution was a Seattle Police Department decoy prostitute, one Myra Boyd.[3] She testified that as she was walking around the area of 6th and Union in Seattle, she was approached by appellant Carter and one Michael Campbell, and that Carter asked her if she had a "man" for security, which Ms. Boyd took to mean whether she had a pimp. About this time, Campbell left, and Carter then told her he would furnish her security, a bail bondsman, a corner on which to work, and good customers in return for one–half of her earnings. Carter wanted to take Ms. Boyd to a nearby tavern for a further discussion on the matter. Instead, Ms. Boyd asked him to meet her in her hotel room where, unbeknownst to Carter, several members of the Seattle Police Department vice unit were stationed. Mr. Carter never showed up and, after waiting approximately 20 minutes, Ms. Boyd went back onto the street.

On her way out of the hotel, she ran into Carter and Campbell and told them she was not playing games. The three of them then proceeded to the hotel lobby to discuss their proposed arrangement. Although Ms. Boyd testified

---

one year nor more than five years."

This statute was repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(205), p. 866. The current statutes defining pimping as a crime are found in RCW 9A.88.060–.090.

[2]"Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross–examination, upon which he shall answer any proper question relevant to that inquiry, and the party cross–examining shall not be concluded by his answer thereto." RCW 10.52.030.

[3]Myra Boyd is not the true name of the decoy.

that Campbell was not present for the entire conversation in the lobby, she did state on the witness stand that both men offered her security, a bail bondsman, and good customers in return for her sharing one–half of her earnings with them. She then asked them to accompany her to her hotel room where the two men were placed under arrest by members of the vice unit.

Carter and Campbell were tried jointly and made several motions both prior to trial and after the State had rested its case. Prior to trial they moved for dismissal of the charges on the basis that RCW 9.79.060(3) was unconstitutionally vague and overbroad. This motion was denied. Also prior to trial, both Carter and Campbell made motions in limine requesting the court to restrain the prosecutor from cross–examining them regarding their prior convictions. Upon learning that the statute under which Mr. Campbell was convicted was later held unconstitutional, the prosecutor stated she would not cross–examine Campbell regarding his prior conviction. The trial court denied Carter's motion in limine. After the State rested, both Carter and Campbell moved for dismissal of the charges on the grounds the State had not proven all of the necessary elements of the crime under RCW 9.79.060(3). These motions were also denied by the court. Campbell then testified he never made any offers to Ms. Boyd. He further testified that he merely told her he would be her man only if she wanted him to be her man and that his statement to Ms. Boyd was made in response to her asking him if he wanted to be her man. Carter did not take the stand. The jury returned a verdict acquitting Campbell and finding Carter guilty as charged.

■ Appellant alleges the words "immoral purposes" found in RCW 9.79.060(3) did not sufficiently define the conduct sought to be proscribed as criminal and thus RCW 9.79.060(3) must be declared unconstitutionally vague. The requirement that criminal legislation be definite in language is premised on two considerations. First, the statute must provide fair notice, measured by common practice and understanding, of that conduct which is prohibited, so that

persons of reasonable understanding are not required to guess at the meaning of the enactment. Second, the statute must contain ascertainable standards for adjudication so that police, judges, and juries are not free to decide what is prohibited and what is not, depending on the facts in each particular case. *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975).

■ We might not hesitate to agree with appellant that the words "immoral purposes" found in RCW 9.79.060(3) were too vague under constitutional standards were we looking at these words in a vacuum. However, we agree with the trial court that in the context of RCW 9.79.060(3), these words clearly provided persons of common intelligence and understanding with fair notice and ascertainable standards of the conduct sought to be prohibited. RCW 9.79 was entitled "Sex Crimes" and RCW 9.79.060 was entitled "Placing persons in house of prostitution—Pimping." Further, RCW 9.79.060(3) made it a crime to "offer . . . any compensation . . . to procure any person for the purpose of placing such person for immoral purposes *in any house of prostitution,* or elsewhere . . ." (Italics ours.) The words "in any house of prostitution," plus the chapter and section headings of RCW 9.79.060 certainly provided a person of reasonable intelligence and understanding with notice that immoral purposes meant sexually immoral purposes involving acts of prostitution. We fail to see how appellant was denied due process under the vagueness doctrine.

■ Related to his argument on vagueness, appellant asserts RCW 9.79.060(3) was overly broad in that it proscribed conduct protected by the First Amendment.[4] As discussed in *Blondheim v. State, supra,* the "overbreadth" doctrine, though related to the "vagueness" doctrine, involves questions of substantive due process. The "overbreadth" doctrine goes to the question of whether a statute

---

[4]U.S. Const. amend. 1.

not only prohibits unprotected behavior, but also prohibits constitutionally protected activity as well. Although appellant argues RCW 9.79.060(3) might have prohibited certain speech protected by the First Amendment, we fail to see how speech directed towards persuading someone to enter into an illegal arrangement, *i.e.*, procuring a person for sexually immoral acts involving prostitution, involves constitutionally protected speech. Appellant's argument on the "overbreadth" doctrine is not well taken.

Appellant next asserts the trial court erred in denying his motion to dismiss after the State had rested, because the State did not prove all the necessary elements of the crime. Initially, he contends that RCW 9.79.060(3) was not directed against a procurer of females, rather, it was directed against the person who offers to reward the procurer. Under appellant's interpretation of the statute, RCW 9.79.060(3) required the State to prove he offered compensation to Myra Boyd for the purpose of persuading her to procure persons for immoral purposes in a house of prostitution. He argues that because he was the procurer and not the person rewarding the procurer, the State charged him under the wrong statute.

Appellant reads RCW 9.79.060(3) too narrowly. The statute did not say that the gratuity, reward, or compensation must be given, offered, or promised to the procurer (*i.e.*, the appellant). It merely prohibited any person from offering compensation to procure a person for immoral purposes in a house of prostitution or elsewhere. The statute was broadly written to prohibit the acts of both the procurer and the person who rewards the procurer. *See State v. Basden*, 31 Wn.2d 63, 196 P.2d 308 (1948).

Appellant also contends the State did not prove a completed crime under RCW 9.79.060(3) because the State made no showing that appellant actually procured Myra Boyd. Using the rule of strict construction of criminal statutes, he argues we must interpret the words "to procure" in

RCW 9.79.060(3) as having meant the State must prove a completed procurement. In support of his argument that RCW 9.79.060(3) required an actual procurement, appellant points to other subsections in RCW 9.79.060 which required an actual result. In particular, appellant directs our attention to *State v. Basden, supra,* where this court held that subsection (1) of RCW 9.79.060 (then Rem. Rev. Stat. § 2440)[5] required the affirmative proof the defendant placed the female in a house of prostitution.

█ We do not agree that the rule of strict construction of criminal statutes compels us to find that RCW 9.79.060(3) required an actual procurement. Penal statutes are strictly construed so that only that conduct which is clearly and manifestly within the statutory terms is subject to punitive sanctions. Strict construction does not mean that a forced, narrow or overstrict construction should be applied to defeat the intent of the legislature. *State v. Rinkes,* 49 Wn.2d 664, 306 P.2d 205 (1957). Simply because other subsections in RCW 9.79.060 required an actual result does not mean subsection (3) must be interpreted as having required a completed procurement. Other subsections of RCW 9.79.060, in rather clear language, required an actual result. For example, RCW 9.79.060(1) was directed against persons who "place a female or male . . . in a house of prostitution . . ." The verb "place" certainly required proof that an actual placement occurred. *State v. Basden, supra.* Subsection (3) contained no such requirement. It did

---

[5]"Every person who—

"(1) Shall place a female in the charge or custody of another person for immoral purposes, or in a house of prostitution, with intent that she shall live a life of prostitution, or who shall compel any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution, or shall compel any such female to reside in a house of prostitution or to live a life of prostitution; . . ."

This section, as RCW 9.79.060(3), has been repealed by Laws of 1975, 1st Ex. Sess., ch. 260.

not state that a person who "procures another and places the latter in a house of prostitution" has committed a criminal act. Actual procurement of the person was not made a necessary element of the crime.

██ Respondent, on the other hand, contends the words "to procure" only required the State to prove the offer of compensation was accompanied by an intent to procure. We cannot agree. This contention gives subsection (3) an expansive coverage so that even an attempt to be a pimp would have been criminal under subsection (3). Strictly interpreting this subsection, more than an attempt was needed. There must have been some agreement to procure or be procured, *i.e.,* some acceptance of the offer to provide compensation. Appellant's conduct here, as testified to by Myra Boyd, did come within the purview of subsection (3). The crime was completed when Ms. Boyd agreed to the offer for the purpose of making the arrest. At the point her objective manifestation of assent was communicated to appellant, an agreement was completed sufficient to come under the terms of the statute. The trial court correctly denied appellant's motion to dismiss at the end of the State's case–in–chief.

██ Appellant also contends his conviction must be reversed because the trial court erred in denying his motion in limine to restrain the prosecutor from cross–examining him regarding his prior conviction for "soliciting a minor for immoral purposes". He argues that this ruling prejudiced his right to a fair trial, because it kept him from testifying on his own behalf. His contention the trial court erred is two–pronged. First, he argues the court erred in ruling it lacked discretion under RCW 10.52.030 to exclude evidence of his prior conviction and in ruling that RCW 10.52.030 as so interpreted is constitutional. This argument was fully discussed and decided in *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977), and need not be repeated

here. Suffice it to say we interpret RCW 10.52.030 as not giving the trial court discretion to exclude evidence of a defendant's prior convictions when introduced for impeachment purposes, and as so interpreted, we find the statute does not violate the constitutional rights of the defendant.

■ Appellant also argues the court erred in not excluding evidence of his prior conviction on the ground the statute under which he was previously convicted was clearly unconstitutional. The trial court denied his motion on the ground appellant had not overcome the basic presumption that all statutes are constitutional until proven differently beyond a reasonable doubt. *See State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971). We agree. On the record before us, it is impossible to determine whether appellant was convicted under RCW 9.79.130,[6] under a city or county ordinance, or even under an out-of-state statute. Further, once appellant made his motion, he made no attempt by affidavit or otherwise to relate the facts under which he was convicted or to direct the court's attention to the court file where the facts leading up to his arrest and conviction may have been found. We do not even know whether appellant was convicted by a judge or jury and, if by jury, what instructions were given to the jury. Finally, there was no showing by appellant whether his conviction was on a plea of guilty or not guilty and, if on a plea of not guilty, whether any appeal followed his conviction. Based on the record before the trial court and before us, we cannot say the trial court erred in denying appellant's motion in limine. *See, e.g., State v. Gallagher,* 46 Wn.2d 570, 283 P.2d 140 (1955).

---

[6]"Every person who solicits, entices or otherwise communicates with a child under the age of eighteen years for immoral purposes shall be guilty of a gross misdemeanor." RCW 9.79.130.

This statute was repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(212), p. 866.

The judgment and sentence of the trial court is affirmed.

WRIGHT, C.J., ROSELLINI, STAFFORD, UTTER, BRACHTEN-
BACH, HOROWITZ, and DOLLIVER, JJ., and HENRY, J. Pro
Tem., concur.