715 So.2d 274 (1998)
Johnny Edgar REGISTER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-4440.
District Court of Appeal of Florida, First District.
April 9, 1998.
*275 Steven L. Seliger, of Garcia & Seliger, Quincy, for Appellant.
Robert A. Butterworth, Attorney General, and J. Ray Poole, Assistant Attorney General, Tallahassee, for Appellee.
MICKLE, Judge.
Johnny Register appeals a conviction for unlawfully procuring for prostitution a person under the age of 18, a felony of the second degree pursuant to section 796.03, Florida Statutes (1995). The appellant contends that the trial court should have granted his motion for judgment of acquittal on this charge because, viewed in a light most favorable to the State, the evidence established, at most, that Register offered money to a 12-year-old girl to have sex with him. She refused his offer and immediately reported the incident to her mother, who notified authorities. Having determined that the mere offer of money to a person under 18 to have sex with the offeror is solicitation, rather than procurement for prostitution, we conclude that the State failed to make a prima facie case of the crime charged. Accordingly, we reverse Register's conviction of procurement for prostitution (Count One). We affirm his conviction and sentence for misdemeanor possession of marijuana (Count Two) pursuant to section 893.13, Florida Statutes (1995).
Section 796.03 states:
Procuring person under age 18 for prostitution.A person who procures for prostitution, or causes to be prostituted, any person who is under the age of 18 commits a felony of the second degree, punishable as provided in [Chapter 775, Florida Statutes].
Section 796.07, Florida Statutes (1995), defines "prostitution":
Prohibiting prostitution, etc.; evidence; penalties; definitions.
(1) As used in this section:
(a) "Prostitution" means the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses.
The act of prostitution "involves a financial element." Gonzales v. State, 107 Fla. 121, 144 So. 311 (1932). Another subsection of this statute outlaws certain related activities:
(2) It is unlawful:

....
(f) To solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation.
....
(4) A person who violates any provision of this section commits:
(a) A misdemeanor of the second degree for a first violation, punishable as provided in [Chapter 775].
§ 796.07, Fla. Stat. (emphasis added). The pertinent statutes do not define either "procure" or "solicit." The appellant argued at trial and on appeal that "solicitation" and *276 "procurement" constitute different acts. According to the appellant's reasoning, the two terms are related only insofar as an initial act of solicitation, i.e., seeking "to obtain by persuasion, entreaty, or formal application," or approaching a person "with an offer of sexual services" according to The American Heritage Dictionary of the English Language at 1229 (1973), might lead to an act of procurement, i.e., obtaining, acquiring, or bringing about a result such as "obtain[ing] (a woman) to serve as a prostitute" according to The American Heritage Dictionary of the English Language at 1044 (1973). See Ford v. City of Caldwell, 79 Idaho 499, 321 P.2d 589, 593 (1958) ("`Procure' means to cause, acquire, gain, get, obtain, bring about, cause to be done; it connotes action. `Procurement' is the act of obtaining, attainment, acquisition, bringing about, effecting."). To show solicitation in the context of sexual activity:
[I]t is only necessary that the actor, with intent that another person commit a crime, have enticed, advised, incited, ordered, or otherwise encouraged that person to commit a crime. The crime solicited need not be committed.
Black's Law Dictionary at 1249 (5th ed.1979). That is, solicitation is the attempt to induce one to have sex. On the other hand, procurement contemplates the attaining, bringing about, or effecting of the result sought by the initial solicitation, such as obtaining someone as a prostitute for a third party. See id. at 1087.
The Supreme Court of Washington effectively described what constitutes "procurement" in State v. Carter, 89 Wash.2d 236, 570 P.2d 1218 (1977) (en banc). The Washington State statute provided for the imprisonment of "[e]very person who ... [s]hall give, offer, or promise any compensation, gratuity or reward, to procure any person for the purpose of placing such person for immoral purposes in any house of prostitution, or elsewhere...." Wash. Rev.Code § 9.79.060(3) (1973). A jury convicted Carter of the crime of pimping under that statute. At the trial, a female Seattle Police Department "decoy prostitute" testified that as she was "walking" a certain area, Carter and another man (Campbell) asked whether she had a "man" for security. The decoy took this to mean whether she had a pimp. After the other man left, Carter offered to furnish the decoy with security, a bail bondsman, a corner on which to work, and good customers in exchange for one-half of her earnings. During a subsequent encounter in a hotel lobby, the decoy told Carter and Campbell that she "was not playing games," whereupon the three individuals further discussed the proposed arrangement. Both men offered the plan that Carter originally had suggested, but Campbell was not present for all of the negotiations in the lobby. Carter and Campbell eventually accompanied the decoy to her hotel room, where the vice unit arrested both men. Carter, 570 P.2d at 1219-20. Carter and Campbell were tried jointly, and the jury acquitted the latter. On appeal, Carter argued, first, that the procurement statute was directed only at the third party who offers to reward the procurer, not at the procurer himself. Determining that "[t]he statute was broadly written to prohibit the acts of both the procurer and the person who rewards the procurer," the supreme court rejected this argument. Id. at 1220-21; State v. Basden, 31 Wash.2d 63, 196 P.2d 308 (1948). Second, Carter argued that the State had failed to prove "a complete crime" because no showing was made that Carter actually "procured" the decoy. The State, on the other hand, contended that procurement was shown where the offer of compensation was accompanied by Carter's intent to procure. The supreme court rejected both positions and said:
Strictly interpreting this subsection, more than an attempt was needed. There must have been some agreement to procure or be procured, i.e., some acceptance of the offer to provide compensation. Appellant's conduct here, as testified to by Myra Boyd [the decoy's pseudonym], did come within the purview of subsection (3). The crime was completed when Ms. Boyd agreed to the offer for the purpose of making the arrest. At the point her objective manifestation of assent was communicated to appellant, an agreement was completed sufficient to come under the terms of the statute. The trial court correctly denied *277 appellant's motion to dismiss at the end of the State's case-in-chief.
Carter, 570 P.2d at 1221. Carter's conviction was affirmed. Id. at 1222.
In the case at bar, the young victim testified that while she was babysitting at a friend's house, the 65-year-old appellant visited the residence, offered the victim "a joint," and asked her to walk over to his camper, which was situated on the same property. When the victim walked inside Register's dwelling, Register asked her to "spend the night" with him. The victim understood this offer to refer to sex. When the victim refused the offer, Register offered her $50 and then $100 to sleep with him. She told him "No" and immediately left and reported the incident to her mother. The victim's 12-year-old friend testified that she had remained discreetly outside the appellant's camper and overheard Register offering the victim various amounts of money to "stay over" at his place. She agreed that the victim had answered "No" and that the two girls immediately had reported what happened. The victim's mother testified that after speaking to her daughter, she confronted Register, who initially denied making the offer but subsequently admitted propositioning the girl and offering her drugs. Unlike the facts in Carter, the State's evidence in the present case showed no "agreement" or "acceptance" on the offeree's part. The victim emphatically rejected Register's attempt or offer, whereas the decoy officer in Carter "accepted" the offer for purposes of preparing to arrest the men.
After the State rested its case, the defense moved for judgment of acquittal on the grounds that section 796.03 does not proscribe someone's soliciting another person for the solicitor's own sexual benefit (rather than for a third party), and that the State had not proved a prima facie case of guilt of the charged offense. In support of its position, the defense cited Barber v. State, 397 So.2d 741, 742 (Fla. 5th DCA 1981), for the proposition that "the underlying purpose of section 796.03 ... appears to be to protect children from sexual exploitation for commercial purposes." See Grady v. State, 701 So.2d 1181, 1182 (Fla. 5th DCA 1997) (affirming conviction of procurement for prostitution, despite defense of lack of knowledge that victim was under age 18, because the state's "compelling interest in protecting underage persons from being sexually abused or exploited" renders certain acts upon children punishable under section 796.03 despite the offender's ignorance of the victim's age). Defense counsel asserted that the "procurement" statute is directed toward persons (such as pimps) who seek to profit financially from engaging minors in prostitution with third parties. The State offered no evidence to suggest that Register sought to exploit the victim sexually for his own financial gain or sought to involve a third party in sexual activity with the victim.
The State, on the other hand, construed section 796.03 so broadly that the mere request and attempt to have sexual activity with a minor, without any resulting sexual activity, would constitute the completed act of procurement. That is, the prosecutor argued that the mere offer of money for sex, even where the child refused to oblige, was sufficient to bring Register's act within the proscriptions of section 796.03. The trial court denied the motion for judgment of acquittal. The court subsequently gave the jury the following instruction governing prostitution and procurement:
Prostitution means the giving or receiving of the body for sexual activity for hire, but excludes sexual activity between spouses. It is not necessary that such sexual activity take place for the crime to be completed. Procure means to cause, acquire, gain, get, obtain, bring about, cause to be done; to instigate, to contrive, bring about, effect or cause; to persuade, induce, prevail upon, or cause a person to do something.
The record clearly demonstrates that the jury was concerned and very much confused regarding the meaning of the procurement charge. Fifteen minutes after starting deliberations, the jury asked the court for a dictionary definition of "procure." The trial judge denied the request but repeated the jury instruction on procurement. Less than an hour later, the jury requested a written definition of "procure," which the court sent to them over a defense objection. A third *278 time, the jury returned with additional questions and was reinstructed on procuring a person under age 18. Within thirty minutes, the jury found Register guilty as charged.
To the extent that penal statutory language is indefinite or "is susceptible of differing constructions," due process requires a strict construction of the language in the defendant's favor under the rule of lenity. § 775.021(1), Fla. Stat. (1995); Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991); Logan v. State, 666 So.2d 260, 261 (Fla. 4th DCA 1996). Construing sections 796.03 and 796.07 together, we conclude that the trial court should have granted the motion for judgment of acquittal. Section 796.03 addresses only procurement for prostitution, not solicitation. Section 796.07(2)(f) makes it unlawful "[t]o solicit ... or procure another to commit prostitution...." Although neither statute defines either "solicit" or "procure," the context in which the two terms are used in section 796.07 indicates a legislative intent to distinguish between the two acts. Section 796.03 applies only to acts of procurement for prostitution of persons under the age of 18, whereas subsection 796.07(2)(f) outlaws soliciting or procuring "another" (without express regard to the age of the victim) for prostitution. Determining the scope of the two statutes is of material importance to the appellant, who was convicted of a second-degree felony and was sentenced to 150 months in prison. In contrast, a first offense of unlawfully soliciting or procuring another person pursuant to section 796.07(2)(f) is only a second-degree misdemeanor, for which a defendant can be incarcerated "not exceeding 60 days." §§ 775.082(4)(b), 796.07(4)(a), Fla. Stat. (1995).
The Florida Legislature has classified as a felony the act of procuring for prostitution anyone under age 18. This designation is consistent with the intent to proscribe the commercial exploitation of children induced to engage in sexual activity with others for the financial benefit of the procurer pimp. Given the absence of a third party in the present case, we need not decide whether successfully inducing a person under age 18 to have sexual activity with the offeror himself falls within section 796.03 or 796.07. Procuring for prostitution anyone 18 years of age or older is a misdemeanor under section 796.07. Soliciting anyone (irrespective of age) for prostitution likewise is a misdemeanor under section 796.07. The appellant tried to induce the minor victim to have sex with him, but she refused his offer. This was mere solicitation, not procurement. See Stevens v. State, 380 So.2d 495 (Fla. 2d DCA 1980) (reversing conviction of procurement for prostitution under section 796.03 and remanding for discharge, where evidence showed that a man known to be a pimp had merely offered 15-year-old victim money and clothes, which she refused to accept, and that victim had refused to work for him). We find nothing in either statute that would support the State's argument that offering money while soliciting someone to have sex with the offeror was intended to have the same criminal consequences as inducing a victim to engage in sexual activity with a third party to the financial benefit of the pimp. A person who offers money to a minor to have sex with him commits a crime. The Florida Legislature has designated such an act of solicitation as a less severe crime than exploiting a minor to engage in sexual activity with a third party, to the procurer's financial advantage. This distinction is a matter within the exclusive prerogative of the legislative branch. If it had intended to classify the act of solicitation of a minor as a felony, the Florida Legislature easily could have done so.
We REVERSE the conviction in Count One pursuant to section 796.03 and AFFIRM the conviction in Count Two pursuant to section 893.13.
KAHN and LAWRENCE, JJ., concur.