[No. 49904-7. En Banc. February 16, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY
H. MACIOLEK, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. SHAWN
ROBERT JOHNSON, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. MELISSA
ANN THOMPSON, *Petitioner.*

STAFFORD, J., did not participate in the disposition of this case.

*Jonathan S. Cole* and *Kim S. Wakefield* of *Washington Appellate Defender Association,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *M. Benton, Deputy,* for respondent.

BRACHTENBACH, J.—This appeal presents a single issue, whether a statute and an ordinance, RCW 9.41.270 and Seattle city ordinance 110179, codified as Seattle Municipal Code 12A.14.075, are unconstitutionally vague.

Petitioners, Larry H. Maciolek and Shawn Robert Johnson, were each convicted of violating RCW 9.41.270. The statute reads:

> It shall be unlawful for anyone to carry, exhibit, display or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

Petitioner, Melissa A. Thompson, was convicted of violating Seattle Municipal Code 12A.14.075(A) (Supp. 4, 1981). The code reads:

> It shall be unlawful for any person to carry, exhibit, display or draw any dangerous knife or deadly weapon in

a manner, under circumstances, and at a time and place that manifest an intent to intimidate another person.

The facts underlying each conviction are as follows

## State v. Maciolek

Petitioner, who had injured his hand, requested a prescription for Percodan from his physician. The doctor had previously determined that the petitioner was abusing prescription Percodan and refused to renew the prescription. Thereupon, the petitioner became very angry and deliberately pulled back his jacket to reveal a handgun which was carried within an inside pocket of the jacket. The doctor, alarmed and intimidated by this display, immediately wrote out a prescription for Percodan. Based upon these facts, the petitioner was found guilty of violating RCW 9.41.270 in Roxbury District Court but the court commissioner set aside the conviction and dismissed the charges after finding the statute unconstitutionally vague. The State appealed this ruling and the Superior Court reversed, finding the statute was neither vague on its face or as applied.

## State v. Johnson

Petitioner, who was 13 years old at the time of the incident, was cited for violating RCW 9.41.270 after an altercation with two 9–year–old children. The two 9–year–olds claimed that the petitioner fired his BB gun at them and after doing so took one of their bikes. While there was ambiguity in the testimony due to the ages of the parties involved, a reading of the entire record supports the conclusion of the juvenile court trial judge that the petitioner and a friend were in possession of weapons at the time in question (BB rifle and BB pistol) and both fired those weapons at the two youths, thus violating RCW 9.41.270.

## State v. Thompson

Petitioner's citation and conviction arose from an incident occurring in downtown Seattle at approximately 1:05 a.m. A Seattle police officer testified that while stopped for

a red light at an intersection, he observed two women running up the center of the street. Petitioner, who was brandishing a knife, appeared to be chasing the second woman. The officer stopped both women and the second woman told the officer that she had argued with the petitioner and that the petitioner had chased her threatening her with the knife. The officer then placed the petitioner under arrest. Based on the foregoing, the juvenile court found the petitioner guilty of violating Seattle Municipal Code 12A.14-.075(A).

The trial court in both Thompson and Johnson denied the petitioners' motions in each case, to dismiss their charges on the grounds that the enactments were unconstitutional. All three cases were appealed to the Court of Appeals. They were consolidated and certified to this court. We now hold that neither the statute nor the code are unconstitutionally vague and affirm all three convictions.

As an initial consideration, the petitioners must have standing to bring their vagueness challenge. *State v. Sherman*, 98 Wn.2d 53, 653 P.2d 612 (1982). All three petitioners allege that each enactment on its face is unconstitutionally void for vagueness. They argue that since they challenge the enactment under which they have been accused as vague and with no standards regardless of their conduct they have standing. *Cf. State v. Zuanich*, 92 Wn.2d 61, 63, 593 P.2d 1314 (1979). The State concedes that the petitioners have standing to challenge the enactments but argue that the petitioners' conduct is relevant in determining the vagueness of each enactment because in all three cases, the petitioners' conduct falls within the constitutional core of both the statute and ordinance. *Cf. State v. Zuanich, supra.*

The analytical framework is set out in *State v. Hood*, 24 Wn. App. 155, 600 P.2d 636 (1979).

The test to be applied by the court in determining whether a statute is unconstitutional depends on the allegation made. When it is alleged that a statute is

wholly unconstitutional, the court looks not to the conduct of the defendant, but to the face of the statute to determine whether any conviction under the statute could be constitutionally upheld. *Bellevue v. Miller,* [85 Wn.2d 539, 536 P.2d 603 (1975)] *supra.* If, upon such an examination, the court finds that no conviction could be upheld, the statute is unconstitutional on its face. *Bellevue v. Miller, supra.*

Although the actual conduct of defendant is irrelevant when a statute is alleged to be unconstitutional on its face, the conduct of defendant is relevant when it is alleged that the statute is unconstitutional only in part, or the court, although not finding the statute to be unconstitutionally vague on its face, finds the statute to be potentially vague as to some conduct. In such cases, the court must look to defendant's conduct to determine whether the statute, as applied to that conduct, is unconstitutional. *Bellevue v. Miller, supra.* This is because while a statute may be vague or potentially vague as to some conduct, the statute may be constitutionally applied to one whose conduct clearly falls within the constitutional "core" of the statute. *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979).

*Hood,* at 158. Therefore, we must examine the two enactments to see if they are facially vague without any concern for the petitioners' conduct. If they are not facially vague but potentially vague as to some conduct then the petitioners' conduct becomes relevant to determine if their conduct falls within the constitutional core of the statute.

We begin our analysis by restating some general propositions. A statute is presumed constitutional and the party challenging the constitutionality of a legislative enactment has the burden of proving it is unconstitutionally vague. *State v. Rhodes,* 92 Wn.2d 755, 600 P.2d 1264 (1979); *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967). A statute or ordinance should not be declared unconstitutional unless it appears unconstitutional beyond a reasonable doubt. *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971); *State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966). Therefore, RCW 9.41.270 and Seattle

Municipal Code 12A.14.075(A) are presumed constitutional with a heavy burden placed on the petitioners to prove the statute and/or ordinance are unconstitutional. *Spokane v. Vaux,* 83 Wn.2d 126, 516 P.2d 209 (1973).

■ To meet this burden the petitioners must prove that neither the statute nor the code satisfies the requirements of due process. The test for evaluating the vagueness of legislative enactments contains two components: adequate notice to citizens and adequate standards to prevent arbitrary enforcement. *Kolender v. Lawson,* ___ U.S. ___, 75 L. Ed. 2d 903, 103 S. Ct. 1855, 1858 (1983); *State v. Hilt,* 99 Wn.2d 452, 454, 662 P.2d 52 (1983); *Seattle v. Pullman,* 82 Wn.2d 794, 797, 514 P.2d 1059 (1973).

> The requirement that criminal legislation be definite in language is premised on two considerations. First, the statute must provide fair notice, measured by common practice and understanding, of that conduct which is prohibited, so that persons of reasonable understanding are not required to guess at the meaning of the enactment. Second, the statute must contain ascertainable standards for adjudication so that police, judges, and juries are not free to decide what is prohibited and what is not, depending on the facts in each particular case.

(Citations omitted.) *State v. Foster,* 91 Wn.2d 466, 474, 589 P.2d 789 (1979), quoting *State v. Carter,* 89 Wn.2d 236, 239–40, 570 P.2d 1218 (1977). Thus, to comport with due process both enactments must meet the dual requirements of adequate notice and adequate standards. We find that both enactments meet this dual requirement and, therefore, neither is unconstitutionally vague on its face.

Petitioners argue that the definition of weapons in RCW 9.41.270 ("other cutting or stabbing instrument", "any other weapon apparently capable of producing bodily harm") and the definition of the weapons use ("in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons") make both enactments unconstitutionally vague, relying quite heavily

on *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975).[1]

 These arguments are not well taken. Both enactments meet the first test for vagueness—adequate notice. "'Common intelligence' is the test of what is fair warning. Thus, if men of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty." (Citations omitted.) *Spokane v. Vaux,* 83 Wn.2d 126, 129, 516 P.2d 209 (1973). Persons of common intelligence would not have to guess at the meaning of these enactments. *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). Clearly, the average person would know what conduct is proscribed by the two enactments: using a weapon to threaten another.

Intimidate is defined very narrowly. "To make timid or fearful: inspire or affect with fear: frighten . . . to compel to action or inaction (as by threats)". *Webster's Third New International Dictionary* 1184. The weapons proscribed by the Seattle ordinance are defined in both the Seattle Municipal Code and the Revised Code of Washington.[2]

---

[1]The Seattle Municipal Code does not contain the language "other cutting or stabbing instrument", "any other weapon apparently capable of producing bodily harm" and "warrants alarm for the safety of other[s]" which is found in the state statute. *Compare* Seattle Municipal Code 12A.14.075(A) *with* RCW 9.41.270. Counsel for petitioners admitted in oral argument that the municipal ordinance is much less vague than the state statute because of this difference in language. We agree with counsel for petitioners, but for purposes of analysis we will treat both as identically worded, unless otherwise indicated, because the same analysis applies with respect to both the statute and ordinance.

[2]Seattle Municipal Code 12A.14.010(B) defines dangerous knife as:

B. "Dangerous knife" means any knife having a blade more than three and one–half inches in length, or any dagger, sword, bayonet, bolo knife, hatchets, straight–edge razor, or razor blade not in a package, dispenser, or shaving appliance.

Seattle Municipal Code 12A.02.150(7) defines deadly weapon as:

"Deadly weapon" means an explosive, firearm, or other weapon, device, instrument, article or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury.

Revised Code of Washington 9A.04.110(6) defines deadly weapon as:

Similarly, the list of weapons proscribed by the state statute is fairly specific and when read in the context of the entire statute apprises an individual of common intelligence what conduct is proscribed. *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977). A statute is not rendered unconstitutional if the general area of conduct against which it is directed is made plain. *Seattle v. Buchanan,* 90 Wn.2d 584, 594, 584 P.2d 918 (1978).

The only potential vagueness of either enactment concerns the nonspecific definition of weapons contained in each. While we do not necessarily agree with petitioners' argument that the terms "deadly weapons", Seattle Municipal Code 12A.14.075(A), and "any other weapon apparently capable of producing bodily harm", RCW 9.41.270, are inherently vague, assuming arguendo that these terms are vague, then the enactments are at best partially vague because they contain a specific definition and a nonspecific definition of weapons.

> [T]here are statutes which contain both precisely worded prohibitions and prohibitions of uncertain application, and such a statute, though potentially vague as to some conduct, may nevertheless be constitutionally applied to one whose act clearly falls within the statute's 'hard core.'

*Bellevue v. Miller, supra* at 541. In all three cases, the petitioners' conduct falls within the statute's or the ordinance's hard core and, therefore, they cannot successfully argue that they had no notice of what conduct was proscribed by either enactment.

Similarly, like the test for notice, both enactments contain adequate standards for enforcement and satisfy this second due process requirement.

Petitioners allege the language of both enactments is standardless and vague in two ways. They argue a weapon

---

"Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury;

apparently capable of producing harm must appear that way to a third party, the police officer; and second, the weapon must be used in a manner that manifests an intent to intimidate or warrants alarm for the safety of others. Therefore, they argue, the language of both enactments allows the police officer to make subjective evaluations of both the weapon and the individual's conduct to determine if one had broken the law, thereby permitting ad hoc determinations of criminality by police officers which is unconstitutional under *Bellevue v. Miller, supra.*

We disagree and believe that the petitioners' argument stems from a misreading of *Bellevue.* The mere fact that a person's conduct must be subjectively evaluated by a police officer to determine if that person has violated a statute does not make that statute unconstitutionally vague. If this were so, most criminal statutes would be void for vagueness. What is forbidden by the due process clause are criminal statutes that contain no standards and allow police officers, judge, and jury to subjectively decide what conduct the statute proscribes or what conduct will comply with a statute in any given case. Thus, it is for this reason that we struck down statutes containing inherently subjective terms such as loiter or wander, *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967); *Seattle v. Pullman,* 82 Wn.2d 794, 514 P.2d 1059 (1973); wanders and prowls with unlawful purpose, *Bellevue v. Miller, supra*; lawful order, *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980); lawful excuse, *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982). In each case the statutes allowed ad hoc decisions of criminality based on the moment to moment judgment of a policeman. *See also Kolender v. Lawson,* ___ U.S. ___, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983); *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). Neither of these enactments suffer from such a defect.

For example, unlike *Bellevue v. Miller, supra,* which dealt with a statute which criminalized wandering or

prowling which manifested an unlawful purpose or warrants alarm for safety of others, this ordinance does not define illegality by resort to inherently subjective terms. In this case the standard of criminality is displaying a *weapon* in circumstances manifesting an intent to intimidate another or which warrants alarm for the safety of another.[3] These elements are not inherently vague. The enactments proscribe use of weapons that threaten another. They are sufficiently specific to inform persons of reasonable understanding what conduct is proscribed, *Seattle v. Rice, supra,* and predicting their application would not be a guess. *State v. Hilt, supra* at 455.

Both the statute and the ordinance prohibit specific identifiable conduct and provide standards by which the lawfulness of particular conduct can be judged. The prohibited conduct provides probable cause for the officer to act and, thus, neither enactment circumvents this constitutional safeguard. *See Bellevue v. Miller, supra* at 546; *Papachristou v. Jacksonville, supra* at 169. After the officer acts, both enactments provide legally fixed standards for

---

[3]The petitioners rely quite heavily on the fact that similar language, warrants alarm for safety of persons or property, was found unconstitutionally vague in *Bellevue v. Miller.* In *Bellevue,* however, the words (prowling or wandering), which qualified the phrase, warranting alarm for safety of persons or property, were also vague and provided no guidelines for the statute's enforcement. In fact, the scope of the ordinance was found to be exceedingly broad. *Bellevue,* at 544. *Bellevue,* however, is not analogous. Unlike the language of the statute in *Bellevue,* the language in RCW 9.41.270, specific weapons, qualifies the phrase "warrants alarm for the safety of other[s]" giving the statute a narrow scope. The weapons listed are not inherently vague like wander and prowl and are sufficiently definite so as to prevent ad hoc determination of criminality. Additionally, even if the phrase "warrants alarm" is vague, if a term or phrase can be made definite by a reasonable construction we will narrowly construe it and uphold the statute. *State v. Martinez,* 85 Wn.2d 671, 538 P.2d 521 (1975).

If a weapon is displayed in a manner, under circumstances and at a time and place so that it poses a threat to another person, such a display would warrant alarm for the safety of another. Thus, narrowly construing the phrase to apply to only conduct that poses a threat to others gives the phrase a narrow and definite focus and saves it from vagueness. *Cf. Bellevue v. Miller, supra* at 547. Such a construction is also consistent with the statute's purpose, which is to prevent someone from displaying dangerous weapons so as to reasonably intimidate members of the public. House Journal, 41st Legislature (1969), at 201.

judge and jury to decide what is or is not prohibited. The enactments are directed at identifiable articulable conduct, have a reasonably definite focus and do not encourage arbitrary enforcement. *Bellevue v. Miller, supra* at 547; *State v. Hilt, supra* at 454. Therefore neither is void for vagueness.

In conclusion, we hold that neither RCW 9.41.270 nor Seattle city ordinance 110179 is unconstitutionally vague on its face. All that is required is for this court to determine whether any conviction can be upheld under either enactment. *Bellevue v. Miller, supra* at 547. The statute and ordinance both clearly proscribe the use of a weapon that threatens another. Although the language of the state statute, as compared to the city ordinance, may be potentially vague, the sole question on a facial challenge is whether the enactment has a hard core of conduct which saves it from vagueness. *State v. Zuanich,* 92 Wn.2d 61, 68, 593 P.2d 1314 (1979). The petitioners' conduct in each case falls within the hard core of the enactment under which each was convicted. We affirm.

WILLIAMS, C.J., ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.