[No. 14891-5-I.   Division One.   May 19, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. RON J. BODEY, *Appellant.*

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Alfred P. Gehri, Deputy,* for respondent.

HOLMAN, J.*—Ron J. Bodey appeals his conviction for providing false information regarding a Department of Labor and Industries claim in violation of RCW 51.48.020. He maintains that the information and jury instructions were deficient, and the evidence against him was insufficient. In addition, he contends that RCW 51.48.020 as applied to him is unconstitutionally vague. We affirm.

---

*Judge Francis E. Holman is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Bodey was injured while working as a referee at a basketball game on February 22, 1982. The next day he went to a doctor for treatment and then filed a claim with the Department of Labor and Industries (DLI) for worker's compensation. In filling out his claim form, Bodey testified that he left blank that portion of the form which asked for the amount of his wages because he did not know what figure to use.

Bodey stated that on March 1, 1982, he visited the local DLI office and told an employee that he had left the wages portion of his claim blank. He said that the employee asked what he did for a living and how much he made. He told her that his main source of income was his home construction business and that when he worked he made $22 per hour. She put that amount on the claim form. He also said he was working in his home construction business when he was injured.

On March 3, 1982, Bodey received a phone call from the DLI advising him that the hourly wage information was insufficient to process his claim. He was advised that his weekly and monthly earnings were also needed. DLI requested that Bodey write a letter to it giving this additional information. He then wrote a letter which stated: "My income from construction is $22.00 per hour, $880.00 per week or $3520.00 per month." Based on this information, DLI began to pay Bodey industrial insurance benefits at the maximum rate. These payments continued until January 7, 1983.

In July 1982, Bodey was interviewed by a DLI investigator who wanted to verify the work done and wages received by Bodey during 1982, prior to his injury. Bodey said that he had earned $1,980 from Jim Watters for installing skylights and $3,982 from Larry Showlund, his brother–in–law, for doing remodeling work on his condominium. The investigator then contacted both Watters and Showlund for verification. Watters did confirm that Bodey worked for him, but the amount Watters paid Bodey differed from Bodey's figures. Showlund denied that Bodey did any work for him

in 1982.

In November 1982, the DLI investigator again interviewed Bodey. Although he reiterated that he did work for Showlund, he now stated that his work consisted of preparing a topographical map on the property where Showlund intended to build a house. He explained that he was paid cash for the job because Showlund was financing the project from winnings he had made from a pyramid game which he had not declared on his income tax return. Bodey explained that this was why Showlund did not want anyone to know about Bodey's work, and Showlund therefore told Bodey not to tell DLI about it. He instead asked Bodey to tell DLI that he was working on the condominium.

On July 27, 1983, Bodey was charged by information with knowingly providing false information to DLI regarding a workers' compensation claim. The information was amended on August 30, 1983, to specify that Bodey provided false and exaggerated information regarding his past income, resulting in an overpayment in excess of $500.

RCW 51.48.020(2) provides:

> Any person claiming benefits under this title, who knowingly gives false information required in any claim or application under this title shall be guilty of a class C felony when such claim or application involves an amount of five hundred dollars or more. When such claim or application involves an amount less than five hundred dollars, the person giving such information shall be guilty of a gross misdemeanor.

■ Bodey contends that it is reversible error for the charging information not to use the statutory language and specify what the allegedly false information was which was *required* in the claim. Instead the information alleged that Bodey gave falsely exaggerated information in *support* of the claim. CrR 2.1(b) requires an information to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." It must "state . . . the official or customary citation of the statute . . . which the defendant is alleged therein to have violated."

Although the information might have specifically stated the false information Bodey provided which was *required* in his industrial insurance claim within the meaning of RCW 51.48.020(2), the record below shows that Bodey never objected to this aspect of the amended information.[1] Thus, the error is waived on appeal. *State v. Bonds*, 98 Wn.2d 1, 17, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983).

Moreover any error in the wording of the information was harmless. Bodey was not prejudiced because the words used in the information conveyed the same meaning as the statutory terms and apprised him with reasonable certainty as to the nature of the crime charged against him. *State v. Jeske*, 87 Wn.2d 760, 765, 558 P.2d 162 (1976). Finally, the jury was instructed that to convict Bodey they must find beyond a reasonable doubt that the information provided by Bodey was "required." This instruction cured any deficiency in the amended information arising out of its failure to specify the false information "required." *Bonds*, at 16–17.

Bodey next contends that the "to convict" instruction was deficient. The pertinent part of this instruction provides:

> To convict the defendant of the crime . . . each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> . . .
>
> (3) That the information provided was required by the Department *with respect to a claim* or application for workman's compensation benefits, . . .

(Italics ours.)

He maintains that this instruction improperly uses the phrase "with respect to a claim," and thus misstates an element of the crime. He urges that the court should have instead given his proposed instruction 1 which provides: "The information was required to be given *in a claim* or application." (Italics ours.)

---

[1] Bodey did move for a bill of particulars regarding the allegedly false statements, which bill was furnished by the State.

■■ We do not perceive any meaningful difference between the words "with respect to a claim" and "in a claim," unless one assumes that "claim" means the actual written form. In that case, the statute would seem to wrongly require that the false statement be literally written into the claim form itself. This is obviously not the legislative intent. Since "claim" is not specifically defined in the statute, it is to be given its ordinary meaning. *State v. Peters,* 35 Wn. App. 427, 431, 667 P.2d 136 (1983). *Webster's Third New International Dictionary* 414 (1976) defines "claim" as "a demand of a right" or a "demand for . . . benefits," both meaning something intangible. Thus, to say that certain information is required "in a claim" is the same as saying it is required "with respect to a claim." The trial court has considerable discretion regarding the specified wording of an instruction. Thus, it was not error for the trial court to refuse to give Bodey's proposed instruction 1. *State v. Dana,* 73 Wn.2d 533, 536, 439 P.2d 403 (1968).

Bodey next contends that because he was an intermittent, irregular worker, the State cannot convict him of providing false information in support of a DLI claim. Bodey first argues that the evidence was insufficient to convict him of receiving an overpayment of $500.

■ Evidence is sufficient to support a verdict in a criminal case if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). It was undisputed that Bodey's March 3, 1982 letter advised DLI that his income was $22 per hour, $880 per week, or $3,520 per month. The testimony of Watters and Showlund illustrated that Bodey could verify only the $1,000 he received as a referee. Thus, the jury could have reasonably concluded that at the time of his injury Bodey was only working as a referee and was, thus, receiving insufficient wages to entitle him to more than the minimum statutory payment. Comparing that minimum

payment of $253 per month to the evidence that Bodey received a benefit of $976 per month for over 4 months and that he received a maximum benefit of $1,053 per month for over 5 months, any rational juror could have found that the difference amounted to overpayment far in excess of $500 for the period concerned.[2] *State v. Green, supra.*

■ Bodey next argues that the State cannot convict him of providing false information regarding a DLI claim because RCW 51.48.020 is unconstitutionally vague. In order to overturn a conviction because it was based on a vague statute, the defendant must show beyond a reasonable doubt that either the statute is wholly unconstitutionally vague on its face or potentially unconstitutional regarding some conduct. Since Bodey contends that RCW 51.48.020 is vague only with respect to him because he was an irregular worker, the court must look to Bodey's conduct to determine whether that conduct is outside the constitutional core of the statute and is thus unconstitutional. *State v. Maciolek,* 101 Wn.2d 259, 262–63, 676 P.2d 996 (1984).

Bodey contends that the statute is unconstitutionally vague when applied to his conduct because in order to charge him criminally, the amount of any overpayment must be based upon calculating the exact amount of his earnings. He maintains that this cannot be done here because he is an irregular worker and the way to calculate his income is not set out in RCW 51.08.178.[3] He further

---

[2] Bodey maintains that the testimony from DLI that it uses a "rule of thumb" to estimate an irregular worker's average monthly income illustrates the impossibility of calculating the actual entitlement. Under its "rule of thumb," in general, DLI totals a person's wages over a period of 6 months, or even longer, then averages the amount. Bodey argues that if the jury looked to his 1981 income tax return showing that he earned $7,400 during the year and concluded that all of it had been received in the last 6 months of the year, then the monthly average during the period would have exceeded the $1,000.

However, neither the trial court, nor the jury, was bound by any such "rule of thumb." *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 786, 329 P.2d 196 (1958).

[3] RCW 51.08.178 provides:

maintains that no statute or regulation may sanction the "rule of thumb" which DLI uses to estimate a worker's average monthly income and then bring criminal charges against that worker if he misstates his income. He relies on *State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980), holding that the public assistance statute was unconstitutionally vague as to a defendant's conduct in a welfare fraud case. In *Ermert,* the defendant's allegedly "unreported income" was only "income" because departmental regulations defined it to be such, but it was not defined as "income" under the applicable statute. Therefore, since the statute which was allegedly violated gave the defendant insufficient notice that her failing to report such "income" would constitute a crime, it was void for vagueness as applied to her conduct. *Ermert,* at 844–45. In addition, the court held that even if the statute allowed a departmental regulation to define "income", that authorization amounted to an unconstitutional delegation of the authority to define a crime to an administrative agency.

That is not the case here. RCW 51.08.178(1) clearly

---

"(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:

"(a) By five, if the worker was normally employed one day a week;

"(b) By nine, if the worker was normally employed two days a week;

"(c) By thirteen, if the worker was normally employed three days a week;

"(d) By eighteen, if the worker was normally employed four days a week;

"(e) By twenty–two, if the worker was normally employed five days a week;

"(f) By twenty–six, if the worker was normally employed six days a week;

"(g) By thirty, if the worker was normally employed seven days a week.

"The term 'wages' shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer, but shall not include overtime pay, tips, or gratuities. The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed.

"(2) In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed."

states that the monthly wages of a worker to be used to determine the amount of benefits to be paid are what the worker was receiving from all employment "at the time of the injury". Bodey represented in writing to DLI that his monthly earnings while working in the construction business at the time of the injury were $3,520 and that he was then working in the construction business. Yet, there was substantial evidence showing that he was only employed as a referee at the time of the injury. The jury discredited the claimed earnings on the Watters and Showlund jobs. Thus, Bodey's conduct clearly falls within the constitutional "core" of the statute, and therefore it was not unconstitutionally vague under the facts of this case. *Maciolek,* at 263.

■ That DLI chose to use its "rule of thumb" in the interest of "whatever is fair" to arrive at a constructive monthly wage by averaging his earnings over a 6–month period so as to justify at least the minimum benefit allowable, does not create an unconstitutionally vague statute. Construction of a statute by the officer or department charged with its administration is entitled to considerable weight. However, it is not binding upon the courts. *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 786, 329 P.2d 196 (1958). Bodey, therefore, fails to prove that RCW 51.48.020 in conjunction with RCW 51.08.178(1) is unconstitutionally vague as applied to his conduct beyond a reasonable doubt. *Maciolek,* at 263.

The judgment is affirmed.

RINGOLD, A.C.J., and WEBSTER, J., concur.