[No. 17535-1-I.   Division One.   January 12, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL POSTEMA, ET AL, *Appellants*.

*David C. Mitchell* and *Kafer, Good, St. Mary & Mitchell,* for appellants.

*Seth R. Dawson, Prosecuting Attorney,* and *James Townsend, Deputy,* for respondent.

COLEMAN, J.—Daniel Postema and Claudia Howard appeal a judgment and sentence for bookmaking on the basis that the statute under which they were charged is unconstitutionally vague. We affirm.

In late 1984, the Everett police became aware of a bookmaking operation under the code name "Hammer" allegedly operating from a telephone number belonging to Daniel Postema at 1501 Rockefeller, Everett, Washington. Posing as a bettor, an Everett police sergeant called the Postema number and talked to Claudia Howard. Howard told the sergeant that she had a "line" through Las Vegas on college football games and all the professional games. She also told him that she charged "vigorish" of 10 percent on losing bets. Howard explained that all bettors used code names, and she maintained the list of code names and

addresses in her regular phone book in case her records were seized by police. She said she was not worried about being arrested, however, because she had an emergency fund to pay the $500 fine.

The sergeant received regular betting sheets from the "Hammer." He made several bets over the phone with Howard and Postema and ultimately lost $800. When the sergeant attempted to bet on the 1985 Super Bowl game, Howard told him that he would have to bet on Miami because she could not take any more bets on San Francisco. Howard said that they had contacts in Las Vegas that took excess bets for them (a "lay off"), but it was too late for the lay off. The sergeant introduced an Everett police officer to Howard as a new bettor. After being assured that the new bettor was not a police officer, Howard contacted the new bettor by phone. The officer made a number of bets with Howard in January and February and introduced Howard to an Everett detective. The detective made a number of bets with Howard, Postema, and Howard's 15–year–old daughter between March and June 1985.

On June 5, 1985, pursuant to a valid search warrant, police searched 1501 Rockefeller. They seized a large quantity of betting slips, money order receipts, cashier receipts, and copies of the *Nevada Sports Schedule.* On August 13, 1985, Postema and Howard were charged with professional gambling: bookmaking, under RCW 9.46.220 and .020(4). On October 4, 1985, Postema and Howard moved to dismiss on the grounds that the statutory definition of bookmaking was unconstitutionally vague.[1] The court denied the motion, holding that bookmaking could be distinguished from casual betting by factors apparent to a person of average intelligence. On November 18, 1985, Postema and Howard entered a plea of not guilty, waived their right to a jury trial, stipulated to the police reports, and were con-

---

[1] RCW 9.46.020(4) provides: "'Bookmaking' means accepting bets as a business, rather than in a casual or personal fashion, upon the outcome of future contingent events."

victed. Appellants assign error to the court's denial of their pretrial motion to dismiss and the court's imposition of judgment and sentence.

There are several general principles that underlie a void for vagueness analysis. A statute is presumed constitutional, and the party challenging it must prove it unconstitutional beyond a reasonable doubt. *State v. Maciolek,* 101 Wn.2d 259, 263, 676 P.2d 996 (1984). A statute is construed as a whole, with all its parts being harmonized to give effect to the intent of the Legislature and to avoid inconsistent and absurd results. *Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 730, 696 P.2d 1222 (1985). A term that is not defined in a statute will be given its ordinary meaning. *State v. Bodey,* 44 Wn. App. 698, 703, 723 P.2d 1148 (1986).

■ A statute is void for vagueness when it violates the due process right of a defendant to receive notice of the crime charged. *State v. O'Neill,* 103 Wn.2d 853, 859, 700 P.2d 711 (1985). Therefore, the test for vagueness is whether a person of common intelligence must necessarily guess at its meaning and differ as to its application. *State v. O'Neill, supra.* This test includes two components: adequate notice to citizens and adequate standards to prevent arbitrary enforcement.[2] *Maciolek,* at 264. In *Maciolek,* the court held that the definition of weapons and weapons' use in two Seattle municipal ordinances provided the notice required under the statute. *Maciolek,* at 265. Citing the dictionary definition of the word "intimidate" and the fact that the list of weapons proscribed is fairly specific, the court held that an average person would know that using a weapon to threaten someone is the conduct proscribed. *Maciolek,* at 264–66.

■■ Applying the *Maciolek* analysis, we must determine if the words "as a business" and "in a casual fashion"

[2]Appellants do not argue the second component, that the statute fails to provide adequate standards for enforcement. We find, however, that the second component is satisfied since the statute does not contain "inherently subjective terms" that allow enforcement agencies to make "ad hoc decisions of criminality based on the moment to moment judgment of a policeman." *Maciolek,* at 267.

in the definition of bookmaking give the average person notice of the proscribed conduct. Appellant cites *Webster's Dictionary* for the definition of "business" that includes a statement that the activity is a means of livelihood. Appellants argue that the activity in which they participated was not a means of livelihood since they worked full time at other jobs. Therefore, they contend that the statute did not give them notice that their conduct was proscribed. Bouvier's Law Dictionary, however, provides a more comprehensive definition of "business," providing that while the purpose of the activity is livelihood or profit, it need not be the sole source of income.

> Business. That which occupies the time, attention, and labor of men for the purpose of livelihood or profit, but it is not necessary that it should be the sole occupation or employment. It embraces everything about which a person can be employed; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. The doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business, yet a series of such acts would be so considered. Lemons v. State, 50 Ala. 130; People v. Com'rs of Taxes of City of New York, 23 N. Y. 244.
>
> It is a word of large and indefinite import; the legislature could not well have used a larger word. Jessel, M. R., in 15 Ch. D. 258. See Place of Business; Domicil.

Bouvier's Law Dictionary 406 (8th ed. 1914).

Appellants further argue that Black's Law Dictionary states that the term "business" has no definite or legal meaning, rendering the term "as a business" too vague. Since the standard is common intelligence, appellants' argument fails. The average person understands that an activity conducted "as a business" is one that is regularly conducted, with prescribed methods, to make a profit. Here, defendants held themselves open to accept bets on either side of a large number of sporting events from strangers, not friends. They distributed a "line" and set the terms of the gambling transaction. They attempted to balance their bets by laying off bets and refusing bets on a side

that had been bet too heavily. They accepted bets continually from several bettors over a period of several months, and they were in possession of a variety of bookmaking paraphernalia. A person of common intelligence would understand that this activity does not qualify as accepting bets in a casual or personal fashion. The activity clearly falls within the scope of professional bookmaking—not the casual acceptance of bets or of betting.

Common intelligence and general knowledge provide an understanding that an activity conducted as a business is a systematic, for profit, regularly engaged in activity as opposed to an irregular, occasional activity. Thus, the definition of bookmaking in the gambling act is not unconstitutionally vague.

The judgment of the trial court is affirmed.

WILLIAMS and GROSSE, JJ., concur.

Reconsideration denied February 27, 1987.

Review denied by Supreme Court May 5, 1987.