[No. 18640-0-I. Division One. January 20, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
FREDRIC BROWN, *Appellant.* ·

*C. M. Hassenstab* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lloyd Corgan, Deputy,* for respondent.

SCHOLFIELD, C.J.—Donald Fredric Brown appeals his conviction for threats to bomb or injure property pursuant to RCW 9.61.160, a gross misdemeanor. We affirm.

## FACTS

On the evening of October 3, 1985, Brown, a regular customer at the Scarlet Tree, came into the restaurant three

times, after walking back and forth in front of the building. McDonell, the bartender and manager of the Scarlet Tree, testified that Brown had a habit of walking up and down the street in front of the restaurant, standing in front of the windows, peering in, and making signs which he concluded Brown expected to cast some kind of spell against the Scarlet Tree.

Brown first entered the restaurant around 11:30 p.m. He looked around, made eye contact with McDonell, and left. At that time, Brown had been told by the management to stay out of the restaurant. Just after Brown left, he came in a second time, and McDonell explained to him that he could not stay. Moments later, Brown walked in the front door for the third time, looked into the dining room and said, "'You're going to burn in hell, you're all sinners. I have just planted dynamite here and it's going to blow.'" Brown then turned and ran out the door.

The Scarlet Tree was approximately 50 percent occupied that night. Brown had spoken loudly enough for the people in the front part of the lounge to hear him and for everyone in the dining room to hear him. Some people looked frightened, and others looked amused. Approximately 12 customers left the restaurant.

McDonell followed Brown as he ran out of the bar, crossed the street, and ducked behind a mailbox, and said to McDonell "'You don't have to believe it, but it's going to blow.'" McDonell returned to the restaurant and called the police.

McDonell originally was quite concerned, but decided he did not believe Brown had planted dynamite inside the building because he had seen him three times and he was not carrying anything and did not appear to have had time to plant a bomb.

Officer William S. Leonard and his partner, Officer Donald Skaar, responded to the reported bomb threat. When they arrived, they spoke with McDonell. There were roughly 25 or 30 patrons in the restaurant and cocktail lounge. Leonard checked the restaurant and restroom for

some type of explosive device, while Officer Skaar developed details from McDonell. No explosive device was found.

Brown was known to frequent a nearby convenience store, so the officers went to the store, where they observed Brown, who matched the description given them. They arrested him, advised him of his rights and took him into custody. Brown entered a plea of not guilty and testified at his trial that he did not go into the Scarlet Tree and that he did not tell anyone that he had planted dynamite. A jury found Brown guilty of threats to bomb a public place. Brown appeals on the ground that RCW 9.61.160 is unconstitutionally overbroad and vague on its face.

RCW 9.61.160 reads:

It shall be unlawful for any person to threaten to bomb or otherwise injure any public or private school building, any place of worship or public assembly, any governmental property, or any other building, common carrier, or structure, or any place used for human occupancy; or to communicate or repeat any information concerning such a threatened bombing or injury, knowing such information to be false and with intent to alarm the person or persons to whom the information is communicated or repeated.

## VAGUENESS

When the claim is made that a statute is void for vagueness on its face, the test is whether the statute satisfies the due process requirements of adequate notice and adequate standards to prevent arbitrary enforcement. *State v. Maciolek,* 101 Wn.2d 259, 676 P.2d 996 (1984). Adequate notice requires describing the proscribed conduct sufficiently that persons of ordinary intelligence are not required to guess at its meaning. Adequate standards for adjudication require sufficient specificity so that police, judges, and juries are not free to decide what is or is not prohibited depending on the facts in each case. *Maciolek,* at 264 (quoting *State v. Carter,* 89 Wn.2d 236, 239–40, 570 P.2d 1218 (1977)). The standards must be sufficiently definite that one can evaluate the lawfulness of particular

conduct. A statute is presumed constitutional, and the challenging party must prove unconstitutionality beyond a reasonable doubt. *Maciolek,* at 263.

The State contends initially that Brown does not have standing to challenge the statute for vagueness. However, when the challenge asserts that the statute under which the defendant is charged is in its entirety unconstitutionally vague on its face, the challenger has standing. *State v. Zuanich,* 92 Wn.2d 61, 63, 593 P.2d 1314 (1979).

Brown argues that RCW 9.61.160 lacks adequate notice. He was prosecuted under the first portion of the statute which does not require proof of an intention to alarm or that persons threatened were alarmed. From that fact, Brown argues that the statute does not give adequate notice of what conduct is proscribed by the statute. We find this argument unconvincing. "[T]o threaten to bomb" premises used for human occupancy adequately describes the offense. While requiring additional elements would narrow the definition of the offense, the additional elements are not necessary to enable persons of ordinary intelligence to know what is meant by a threat to bomb a building.

Where a term used in a statute is not defined therein, it should be given its ordinary meaning. *State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 662 P.2d 38 (1983). To threaten is to express an intention to inflict evil, injury, or damage on another. *Webster's Third New International Dictionary* 2382 (1969). The rules of statutory construction state that where a term is defined by the Legislature, that definition will be applied by the courts construing the term. *Seattle v. Shepherd,* 93 Wn.2d 861, 866, 613 P.2d 1158 (1980). "Threaten" is defined in the definitional section of the criminal code as communicating, directly or indirectly, the intent to cause bodily injury or physical damage to property of another. RCW 9A.04-.110(26).

From both the plain meaning and the legislative definition of "threaten", it is implicit that "threaten to bomb"

means expressing an intent to cause injury or damage. The words "threaten" and "bomb" are terms readily understood by persons of ordinary intelligence. The overwhelming likelihood that a threat to bomb will cause fear, alarm or worse makes it unnecessary to expressly add additional elements to give adequate notice of the conduct proscribed by the statute.

Brown argues that the words "or otherwise injure" found in the first portion of the statute are potentially vague. However, the State is not attempting to enforce that provision against Brown. The possibility that a vagueness problem could arise when the State is forced to rely upon the phrase "or otherwise injure" is not relevant to a decision here where Brown's conduct falls squarely within the constitutional core of the statute. In this situation, the statute is not vague. *State v. Zuanich, supra* at 68.

For the reasons expressed above, we are also satisfied that the statute sets forth adequate enforceable standards. The words "threaten" and "bomb" have a sufficiently specific meaning to remove the danger that persons responsible for enforcing the statute would have an impermissible discretion to expand or contract the meaning for purposes of a particular case.

### OVERBREADTH

Brown contends RCW 9.61.160 is overly broad because it does not require an intent to alarm or actual alarm and contains no definition of "or otherwise injure".

A statute is overly broad where it is susceptible of application to protected speech. *State v. Reyes,* 104 Wn.2d 35, 41, 700 P.2d 1155 (1985). If the reach of the statute can reasonably be construed to apply only to unprotected speech, then its validity can be sustained. *Reyes,* at 41–42 (citing *New York v. Ferber,* 458 U.S. 747, 769 n.24, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982)).

The thrust of Brown's argument is that since the part of the statute under which he was prosecuted does not require

intent to alarm or actual alarm as elements of the offense, there is no compelling state need justifying the restriction.

Threats of harm to others do not fall within the realm of protected speech. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Phillips v. Puryear,* 403 F. Supp. 80, 88 (W.D. Va. 1975); *Lanthrip v. State,* 235 Ga. 10, 218 S.E.2d 771 (1975).

> Statutes prohibiting terroristic threats, extortion, blackmail, and the like, though often applied to conduct involving "pure speech," have been consistently enforced and upheld. As an illustration, the federal statute that prohibits threatening death or bodily harm upon the President of the United States, 18 U.S.C. § 871(a), has been upheld by the Supreme Court of the United States against a first amendment challenge that it prohibits "pure speech." *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

*Carlsen v. Morris,* 556 F. Supp. 320, 322 (D. Utah 1982).

The statute challenged here is not overbroad because it is readily susceptible to a narrow construction consistent with the statutory definition of "threaten", which limits its application to unprotected speech. *Gooding v. Wilson,* 405 U.S. 518, 522, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972).

The judgment is affirmed.

WILLIAMS and COLEMAN, JJ., concur.