This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                           **NO. 34,155**

**MANUEL S. CHAVEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

{1}    Defendant Manuel Chavez appeals from his judgment and sentence entered upon a jury conviction for second degree murder contrary to NMSA 1978, Section 30-2-1(B) (1994). [RP 88, 90] Unpersuaded by Defendant's docketing statement, we issued a notice of proposed summary disposition, proposing to affirm. In response to our notice, Defendant has filed a joint memorandum in opposition and motion to amend the docketing statement. Having carefully considered Defendant's arguments, we remain unpersuaded, and therefore deny Defendant's motion to amend and affirm the district court.

**MOTION TO AMEND**

{2}    Defendant has moved to amend his docketing statement to add four new issues: (1) whether the district court erred in issuing a jury instruction on voluntary manslaughter that did not contain the sufficient-provocation element; (2) whether the jury should have been given an instruction on involuntary manslaughter; (3) whether defense counsel failed to provide effective assistance; and (4) whether Defendant's right to a speedy trial was violated. [MIO 1] None of these issues was preserved below and Defendant asks this Court to review for fundamental error. [MIO 1-2] *See State v. Hodge*, 1994-NMSC-087, ¶ 25, 118 N.M. 410, 882 P.2d 1 (explaining that preservation of an alleged error is generally required for appellate review, but noting that there is an exception that applies to cases involving fundamental error). For the

2

reasons that follow, we do not believe that Defendant has shown good cause to amend the docketing statement, and we therefore deny his motion. *See* Rule 12-208(F) NMRA (requiring good cause to amend docketing statement).

**A. Voluntary Manslaughter Instruction**

{3}     Defendant argues that the trial court erred in issuing a jury instruction that omitted an essential element. [MIO 4-6] Specifically, Defendant asserts that the voluntary manslaughter instruction given to the jury in this case omitted "element number three, an essential element which informs the jury that a defendant's action[] result[s] from sufficient provocation." [MIO 5] The jury instruction supplied to the jury in this case does not, as Defendant points out, contain the third element in UJI 14-220 NMRA, which states, "The defendant acted as a result of sufficient provocation." Instead, the third element in the jury instruction reads, "The defendant did not act in self defense." [RP 76]

{4}     Our Supreme Court's opinion in *State v. Parish*, 1994-NMSC-073, 118 N.M. 39, 878 P.2d 988, controls in this case. In *Parish*, the jury convicted the defendant of voluntary manslaughter, but "the jury was first asked to decide whether [the defendant] committed second degree murder, which is distinguished from voluntary manslaughter by the element of provocation." *Id.* ¶ 21. The Court expressed concern that the instruction on provocation contained language that was similar to the

instruction on self-defense. *Id.* ¶¶ 21-22. It stated: "The jury could easily have found that [the facts of the case] fell within the definition of self-defense. However, upon considering the instruction on voluntary manslaughter, the jury may also have found in these same facts the element of provocation. Both instructions describe a situation which arouses fear in the Defendant. . . ." *Id.* ¶ 22. As a result, it further stated: "It is plausible that a reasonable juror might be confused by first finding sufficient provocation to reduce the charge from second degree murder to voluntary manslaughter, and to then discard the concept of provocation and use the same facts that evinced provocation to prove self-defense." *Id.* ¶ 23. It determined, in other words, that the instructions on self-defense and provocation were "mutually exclusive"—"[e]ither the Defendant is guilty of having been provoked into voluntary manslaughter or he is innocent because he killed in self-defense." *Id.* ¶ 22. It therefore concluded that instructing the jury on both was inappropriate.

{5}     In this case, the district court appears to have recognized the conflict and, to resolve it, the court instructed the jury consistent with the requirements set forth in *Parish*. *See id.* ¶¶ 14, 23 (providing that the instruction proffered by the defendant in that case (but refused by the trial court), which is identical in material respects to the instruction supplied in this case, [RP 76] would have prevented the error that resulted in reversal). In other words, in this case, Defendant was entitled to claim either self

defense or provocation; Defendant asserted that he acted in self defense, and he received an instruction in accordance with that claim consistent with *Parish*. Hence, we perceive no error, much less fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

**B. Failure to Instruct on Involuntary Manslaughter**

{6}     Defendant next challenges the district court's failure to instruct on involuntary manslaughter. [MIO 7] Defendant, however, failed to preserve this alleged error by failing to tender or otherwise advocate for the inclusion of an involuntary manslaughter instruction, and we therefore review for fundamental error only. [MIO 7] *See State v. Sosa*, 1997-NMSC-032, ¶ 23, 123 N.M. 564, 943 P.2d 1017 ("Having failed to proffer accurate instructions, object to instructions given, or otherwise preserve the issue for appeal, ... we will limit our evaluation to the claim of fundamental error."); Rule 5-608(D) NMRA (setting forth the preservation requirements relative to jury instructions).

{7}     When jury instructions are at issue, fundamental error generally occurs when the jury was not instructed on an essential element of an offense or when it otherwise

appears that "a reasonable juror would have been confused or misdirected by the jury instruction" at issue. *See State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Here, even assuming that Defendant was entitled to an instruction on involuntary manslaughter, *see State v. Romero*, 2005-NMCA-060, ¶ 17, 137 N.M. 456, 112 P.3d 1113 ("As we have held that self-defense was available to Defendant, the jury could have found that his beating of the victim was in the commission of a lawful act, but without due caution or circumspection due to her drunken state and liver condition."), the failure to make any such assertion at the trial level is determinative of this issue. The decision not to request the instruction may have been a conscious decision attributable to trial strategy, and, if that is the case, we will not second-guess the tactical decisions of counsel below. *See State v. Boeglin*, 1987-NMSC-002, ¶ 15, 105 N.M. 247, 731 P.2d 943 ("We hold that, consistent with the constitutional guarantees of a fair trial, the defendant in a first degree murder prosecution may take his chances with the jury by waiving instructions on lesser included offenses and cannot be heard to complain on appeal if he has gambled and lost."). Under these circumstances, we conclude that this case does present a situation that meets the exacting standard requiring reversal due to fundamental error.

## C. Ineffective Assistance of Counsel

{8}    Defendant alleges that counsel was ineffective for three reasons: (1) for failure to request the involuntary manslaughter instruction addressed above, (2) for failure to move to exclude Defendant's statements to police while Defendant was allegedly intoxicated, and (3) for failure to assert Defendant's right to speedy trial or move to dismiss on for violation of his right to a speedy trial. [MIO 10-11]

{9}    Defendant has the burden of establishing a prima facie case of ineffective assistance. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Defendant may only establish a prima facie case by showing that his counsel's performance fell below the performance of a reasonably competent attorney and that his counsel's deficient performance prejudiced him. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Dylan J.*, 2009-NMCA-027, ¶ 37, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted).

{10}    In considering an ineffective assistance of counsel claim, our review is limited to an evaluation of the facts contained within the record. "If facts necessary to a full

determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Here, Defendant claims of ineffectiveness relate to matters outside the record, and we are therefore unable to conclude that Defendant has made a prima facie showing of ineffective assistance of counsel. *See State v. Cordova*, 2014-NMCA-081, ¶ 15, 331 P.3d 980. With respect to the first alleged error relating to the involuntary manslaughter instruction, as we explained above, this decision could have been trial strategy, and we have repeatedly refused to "find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct." *State v. Allen*, 2014-NMCA-047, ¶ 17, 323 P.3d 925. Relative to counsel's failure to move to exclude Defendant's statements to police, the resolution of this claim likewise depends on evidence not in the record, and we therefore conclude that Defendant's claim is more properly adjudicated in habeas corpus proceedings. *See Cordova*, 2014-NMCA-081, ¶ 7 (explaining that our Supreme Court has a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceeding, which "stems from a concern that the record before the district court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness" (alteration, internal quotation marks, and citation omitted)); *see also State v. Samora*, 2013-NMSC-038, ¶ 23, 307 P.3d 328

("Because we usually have insufficient information before us to evaluate an ineffective assistance claim on direct appeal, as in this case, this Court prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." (internal quotation marks and citation omitted)).

{11} For similar reasons, we also reject Defendant's claim of ineffective assistance based on the failure to raise a speedy trial claim. To determine the merits of a speedy trial motion, we evaluate the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) (the *Barker* factors): length of delay, reasons for the delay, defendant's assertion of the right to a speedy trial, and prejudice to the defendant. *See State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370.

{12} Relative to this issue, we glean the following information based on the record before us. First, it appears that the length of delay in this case was approximately two and one-half years from the time of indictment to trial months—well over even the eighteen-month presumptively prejudicial benchmark for complex cases. *See State v. Garza*, 2009-NMSC-038, ¶ 48, 146 N.M. 499, 212 P.3d 387 (setting forth the applicable benchmarks for determining when a delay is presumptively prejudicial for purposes of speedy trial analysis).[RP 1, 57] Relative to the third *Barker* factor (assertion of the right), it appears that Defendant did not, at any time in the

9

proceedings, assert his right to a speedy trial or assert that his right had been violated. [MIO 19-20] Finally, relative to the last *Barker* factor (prejudice), it appears that Defendant was incarcerated from the time of his arrest until sentencing—a period of approximately two and one-half years. [RP 95] *See Barker*, 407 U.S. at 532 (identifying three potential sources of prejudice caused by delay as (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defense); *accord State v. Garza*, 2009-NMSC-038, ¶ 35, 146 N.M. 499, 212 P.3d 387. Beyond this, however, we are unable to determine the merits of Defendant's claim because the record is not sufficient to establish whether the speedy trial claim was viable and, accordingly, whether defense counsel was unreasonable in failing to move to dismiss on speedy-trial grounds. "Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation." *State v. Arrendondo,* 2012-NMSC-013, ¶ 38, 278 P.3d 517.

{13}    We commend appellate defense counsel's efforts to piece together what occurred below based on the information she had before her relative to this issue, [MIO 17-19] but even she acknowledges that there is a limited record and it is thus unclear what caused much of the delay in this case. [MIO 17] Counsel suggests that assigning this case to the general calendar would aid in development of the facts, but we fail to see how that assignment would help, since the problem is not that we do not

have a complete record of the proceedings below; rather, the issue is that even with the complete record, we would not have enough information to resolve this issue since these issues were not raised below. *See State v. Jensen*, 1998-NMCA-034, ¶ 18, 124 N.M. 726, 955 P.2d 195 (explaining that "[w]hen a case is assigned to a general calendar, the factual basis for the issues must be contained in the record of proceedings made below" and without a factual basis in the record, the claim of error must be rejected).

**D. Speedy trial**

{14}     For the same reasons set forth in addressing the ineffective assistance of counsel claim premised on counsel's failure to raise Defendant's right to a speedy trial below, we hold that no fundamental error occurred with respect to Defendant's speedy trial claim. [MIO 13-21] *See State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("[N]othing in the record suggests such a striking violation of the constitutional right to a speedy trial that it would be appropriate to consider that issue for the first time on appeal." (internal quotation marks and citation omitted)).

{15}     In considering the foregoing—in particular, that many of these issues require development of the record below in order to assess their merit—we conclude that Defendant has not presented viable issues in his motion to amend, and we therefore deny his motion. *See State v. Munoz*, 1990-NMCA-109, ¶ 19, 111 N.M. 118, 802 P.2d

23 (stating that if counsel had properly briefed the issue, we "would deny defendant's motion to amend because we find the issue he seeks to raise to be so without merit as not to be viable"). However, Defendant may consider raising these claims in a collateral proceeding so that these issues may be developed and considered on their merits.

**SUFFICIENCY OF THE EVIDENCE**

{16}     Defendant continues to challenge the sufficiency of the evidence to support his conviction for second-degree murder. [MIO 21-24] Specifically, in response to our proposed disposition, Defendant asserts that the State failed to prove the second element of the offense, *i.e.*, that Defendant knew that his acts created a strong probability of death or great bodily harm to Victim. [MIO 23] Defendant contends that "his level of intoxication" rendered him incapable of forming the necessary *mens rea* to commit second-degree murder. [MIO 23] Our Supreme Court, however, has held that "intoxication is not a defense to second-degree murder." *State v. Campos*, 1996-NMSC-043, ¶ 31, 122 N.M. 148, 921 P.2d 1266. It reasoned that "voluntary intoxication is only a defense to specific-intent crimes, whereas second-degree murder is a general-intent crime." *Id.* Accordingly, Defendant's claim of insufficiency premised on intoxication is without merit because intoxication cannot, as a matter of law, negate the intent requirement in second-degree murder. *See id.* ¶¶ 30-46

(discussing the *mens rea* requirement for second-degree murder, its interplay with intoxication, and rejecting intoxication as a defense to second-degree murder).

{17}     Further, for reasons set forth in this Court's proposed disposition, we conclude that the evidence presented at trial was otherwise sufficient to establish second-degree murder beyond a reasonable doubt. *See State v. Day*, 2008-NMSC-007, ¶ 15, 143 N.M. 359, 176 P.3d 1091 (explaining that a reviewing court does not weigh the evidence or substitute its judgment for that of the factfinder as long as there is sufficient evidence to support the verdict); *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." (internal quotation marks and citation omitted)); *see also State v. Archie*, 1997-NMCA-058, ¶ 10, 123 N.M. 503, 943 P.2d 537 ("Intent involves a defendant's state of mind and is seldom, if ever, susceptible to direct proof. Therefore, intent may be proved by circumstantial evidence." (citation omitted)).

{18}     For the reasons stated above and in our calendar notice, we deny Defendant's motion to amend and affirm his conviction for second degree murder.

{19}     **IT IS SO ORDERED.**

13

_____

**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**TIMOTHY L. GARCIA, Judge**